CONTINENTAL LIVE STOCK CO. *v.* KING.

1. BANKRUPTCY—DISCHARGE—CONVERSION—WILFUL AND MALICIOUS INJURIES.

A wilful and malicious injury, as that term is used in the bankruptcy act, does not follow as of course from every act of conversion as there may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed and in such cases a discharge in bankruptcy will prevail as against a showing of conversion without aggravated features (42 Stat. at L. p. 354 [11 USCA, § 35]).

2. ANIMALS—BREEDING CONTRACTS—CONVERSION—INTENT—BANK-
RUPTCY.

> In action tried without a jury by company engaged in business of
> placing hogs with farmers for breeding purposes under condi-
> tional sales agreements whereby seller was to obtain from the
> increase two hogs weighing at least 200 pounds for each hog
> placed, record *held*, to justify finding of circuit judge that
> after plaintiff had obtained 10 of the 20 hogs to which it was
> entitled conversion by defendant of other 10 was not wilful and
> malicious, for which he would be liable after discharge in bank-
> ruptcy, where remaining hogs became diseased, were sold in
> several lots over a period of a month and course of dealing
> indicates defendant acted in good faith although, due to other
> losses, he thereafter filed a voluntary petition in bankruptcy
> (42 Stat. at L. p. 354 [11 USCA, § 35]).

Appeal from Lenawee; Rathbun (George A.), J.
Submitted January 12, 1938. (Docket No. 121, Cal-
endar No. 39,776.) Decided April 4, 1938.

Action by Continental Live Stock Company, a co-
partnership, against Norman King for conversion
of hogs. Judgment for defendant. Plaintiff ap-
peals. Affirmed.

*Alexander & Baldwin,* for plaintiff.

*Richard F. Roe,* for defendant.

NORTH, J. Plaintiff sued to recover $250 for the
conversion of 10 hogs. The defense set up was a
discharge in bankruptcy. There was judgment for
defendant and plaintiff appeals.

The Continental Live Stock Company was engaged
in the business of placing hogs with farmers for
breeding purposes. The farmer signed a conditional
sales agreement under the terms of which he was
required to feed and care for the hogs, and from the
increase plaintiff company had the right to select

two hogs weighing at least 200 pounds for each hog placed with the farmer.

On December 13, 1933, defendant executed one of these conditional sales agreements and plaintiff delivered to him 10 sows. Defendant fed and cared for these sows and their increase, and a year later (December, 1934) plaintiff called for the hogs to which it was entitled under the contract. Only 10 were found to be the required 200 pounds in weight. Those 10 were accepted and defendant was to keep the rest until they reached the required weight. The following month defendant sold all of the hogs he had on hand.

Later defendant was evicted from the farm on which he was living, and he also lost practically all of his farm equipment through a chattel mortgage foreclosure. Thereafter he filed a voluntary petition in bankruptcy, in which the claim of plaintiff was scheduled; and in September, 1935, he was discharged in bankruptcy. This discharge was set up as a defense to the present action. Plaintiff however contends that the sale of the hogs without its knowledge and consent constituted a wilful and malicious injury within the following provision of the bankruptcy law:

"Debts not affected by a discharge. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * are liabilities for * * * wilful and malicious injuries to the person or property of another." 42 Stat. at L. p. 354 (11 USCA, § 35).

To substantiate its claim that defendant took its property intentionally, wilfully and maliciously the plaintiff calls attention to the following provision of the contract:

"The animal or animals * * * and the farrow, whether first, second or third farrow, shall remain the property of the first party (plaintiff) until said hog or hogs, as the case may be, are delivered to first party, and at the time of delivery the title to said animal or animals shall pass to second party and this contract shall be terminated."

That defendant knew of this contract provision is shown by the testimony of plaintiff's manager, Mr. Brackin, who visited defendant's farm on July 18th at which time he learned that defendant on March 1st had sold 15 pigs raised from sows furnished by plaintiff without first obtaining permission. At that time Mr. Brackin remonstrated with defendant. Later when vaccination reports were sent in to plaintiff company it was discovered that more pigs were missing and plaintiff wrote the following letter to Mr. King:

"We received your vaccination certificate for the pigs, but undoubtedly you have sold some pigs from the sows.

"Please do not sell any more of these pigs without communication with us."

Mr. King on cross-examination admitted he knew the pigs were the property of plaintiff and that he sold them without permission, except as hereinafter indicated. He gave testimony to the following circumstances which he claims justified him in selling the hogs and disproves plaintiff's charge of wilful and malicious misconduct. About three weeks after delivery of the first 10 hogs to plaintiff, Mr. Brackin called at defendant's farm to inspect the balance of the hogs. Mr. King testified as follows in regard to their conversation:

"The only thing he said to me at that time why he had not had the other 10 picked up was that they

were under weight, and that they were not calling for them at that time quite as fast as they had been. He wanted me to continue to keep them until they weighed around 200.  *  *  *  I said to him, 'If you don't pick these up before long how about my keeping them and breeding them?' He said, 'Use your own judgment.' "

A few weeks later the hogs became afflicted with some disease. King said he called the live stock company's office about the first of January so to advise Mr. Brackin but he was not in; that he (King) advised the woman answering the telephone as to the condition of the hogs and that he would have to sell them as they were no good for breeding, and was told to use his own judgment. Hearing nothing further from plaintiff company, defendant King sold the balance of the hogs. He did not sell them all at one time but on three or four different occasions he sold those in the worst condition. His reason for selling in separate lots was "because I wanted to keep them if I could, keep them to breed."

Defendant denied any intention to injure plaintiff wilfully or maliciously or to deprive it of its property, and gave the following testimony as indicating his motives in making the sale.

"*Q.*   But you tell the court you had no thought or intention that you were going into bankruptcy at the time this sale of the hogs was made?

"*A.*   No, I didn't have no intention.

"*Q.*   In the past, in previous contracts with the Continental Live Stock Company, had there been accommodations and courtesies both ways, from you to them and them to you?

"*A.*   Yes, sir.  *  *  *

"*Q.*   Now, when Mr. Knapp called at the farm in February, did you tell him at that time that you had sold the hogs and why you had sold them?

"*A.* Yes, sir. And he agreed with me they was no good for breeding purposes when that affliction comes onto them.

"*Q.* Did you have any intent or desire or purpose to defraud or deprive the Continental Live Stock Company of their property?

"*A.* No, sir.

"*Q.* And your thought was to make it good by delivering them 10 gilts the following year?

"*A.* Yes, sir.

"*Q.* And you would have done that had you been permitted to stay in business?

"*A.* Yes, sir."

By this record clearly a question of fact is presented as to whether defendant in selling the hogs intended to injure plaintiff "wilfully and maliciously." The trial judge, who had the opportunity both to hear and see the witnesses for the respective parties, passed upon this question and found in favor of defendant. We quote from the opinion filed by the trial judge:

"It is not, in my judgment, a case whether or not consent was actually given to make the sale. The question is whether or not there was any wilful or malicious act on the part of the person who claims bankruptcy as a defense. Here this man did not attempt to sell under cover of darkness. He did it in the usual course of business, and he didn't attempt to sell to try and get away with the money, although he probably did not happen to contact either Mr. Brackin or Miss Bonham at the time of the telephone conversation. I am satisfied in my own mind that he at least phoned the office, and that he at least waited a week afterwards within which to make his first sale which in and of itself entirely negatives any thought of concealment; and that is furthermore negatived by the fact that he didn't sell all these gilts at one time. He sold them in four separate

lots. All of which impresses me with the belief that he was acting in good faith and that unfortunately circumstances subsequently brought upon him, of which he then had no knowledge, resulted in his inability to fulfill his then intention."

Appellant in support of its contention that the sale of its property by defendant in the instant case constituted a wilful and malicious injury within the terms of the bankruptcy statute, cites and relies upon *Probst* v. *Jones,* 262 Mich. 678. However, it must be borne in mind that the court found in the cited case that "defendant did not act in good faith." The finding in the instant case is directly to the contrary, and in consequence thereof the law of the *Probst Case* is not here applicable. In our judgment this case is of the type passed upon in *Davis* v. *Ætna Acceptance Co.,* 293 U. S. 328, 332 (55 Sup. Ct. 151), wherein the court, speaking through Mr. Justice Cardozo, said:

"But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. * * * There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one. * * * The discharge (in bankruptcy) will prevail as against a showing of conversion without aggravated features."

We cited and quoted with approval the *Davis Case* in *Money Corporation* v. *Draggoo,* 274 Mich. 527.

In the instant case the circuit judge concluded that defendant's course of conduct was not prompted by maliciousness or wilfulness and that therefore his

discharge in bankruptcy constituted a bar to recovery. On this record we cannot say that the determination of the circuit judge was not justified by the evidence. It follows that the judgment must be affirmed. Costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.