## WAYNE CREAMERY v. CLEMENTS

1. Principal and Agent—Commission Merchant—Fiduciary.

   A commission merchant and factor who sells his principal's goods and retains the money is not a fiduciary.

2. Bankruptcy—Indebtedness—Fiduciary Capacity.

   Provision in assignment of accounts receivable that assignor will hold in trust for assignee all payments on assigned accounts, and on demand will turn over such payments to assignee, does not constitute assignor a fiduciary for assignee within the meaning of the Bankruptcy Act, and does not transform indebtedness under assignment into a non-dischargeable fiduciary debt (Bankruptcy Act § 17[a][4]).

3. Same—Credit—Accounts Receivable—Release.

   Defendant's indebtedness to plaintiff arising when plaintiff extended credit to defendant for goods and accounts receivable which it sold to defendant *held*, to be a typical commercial indebtedness which Congress by enacting the Bankruptcy Act intended to be covered by the defendant bankrupt's discharge.

Appeal from Common Pleas Court of Detroit, O'Brien (John Patrick), J. Submitted Division 1 March 8, 1968, at Detroit. (Docket No. 3,954.) Decided October 24, 1968. Rehearing denied November 28, 1968.

Complaint by Wayne Creamery against Eugene K. Clements on a debt. Judgment for defendant. Plaintiff appeals. Affirmed.

References for Points in Headnotes

[1] 32 Am Jur 2d, Factors and Commission Merchants §§ 1, 2, 25.
[2] 9 Am Jur 2d, Bankruptcy § 1127.
[3] 9 Am Jur 2d, Bankruptcy §§ 388, 778.

*Leo Papp,* for plaintiff.

*Berry, Hopson, Francis & Mack,* for defendant.

LEVIN, J.    The defendant, Eugene K. Clements, was adjudicated a bankrupt and received a discharge of his debts.    The plaintiff, Wayne Creamery, brought this action claiming the defendant's pre-bankruptcy indebtedness to the plaintiff was not released by the discharge.    The plaintiff relies on the exception for debts created by the bankrupt's "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."    Section 17(a)(4) Bankruptcy Act (11 USC § 35).

The defendant had leased a milk route from the plaintiff.    At the time the lease was agreed upon the defendant took over $1,346 of existing route customers' accounts receivable, agreed to purchase from the plaintiff all creamery and other products sold on the route, and executed a continuing assignment of accounts receivable to secure payment of all his then and future indebtedness to the plaintiff.    When the route lease terminated, the defendant's books showed old accounts receivable still uncollected of $755, from which the plaintiff infers the defendant collected $591 of old accounts receivable.    At trial the defendant conceded he owed the plaintiff $3,630, $591 for old accounts receivable and $3,039 for products purchased.    There was evidence that a sum in excess of that total had been collected from customers but not turned over to the plaintiff.

The assignment of accounts receivable provided that the defendant would "hold in trust" for the plaintiff all payments on the assigned accounts, and "upon demand" would turn over all payments to

the plaintiff.   The plaintiff asserts the "hold in trust" provision establishes that the defendant's indebtedness to the plaintiff was created while the defendant was acting in a "fiduciary capacity." The trial judge correctly rejected that argument.

In *Davis* v. *Aetna Acceptance Co.* (1934), 293 US 328, 334 (55 S Ct 151, 154, 79 L Ed 393, 398), the United States Supreme Court, interpreting previously quoted subdivision 4 of the bankruptcy act, § 17(a), declared:

"A mortgagor in possession before condition broken is not a trustee for the mortgagee within the meaning of this statute, though he has charged himself with a duty to keep the security intact."

That holding controls decision here.   In *Davis* the bankrupt was a dealer in automobiles and borrowed thereon from Aetna; he signed both a chattel mortgage and trust receipt.   The court declared (p 334) the "resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust."[1]

Plaintiff relies on *Travelers Insurance Co.* v. *Bishop* (1941), 298 Mich 600, and *Citizens Mutual Automobile Insurance Co.* v. *Gardner* (1946), 315 Mich 689.   In the cited cases insurance agents authorized to write insurance and to collect premiums failed to account to the insurer for amounts collected; it was held that the debt was created while the agents were acting in a fiduciary capacity. A Michigan statute then and now[2] provides that an

---

[1] See, also, *Upshur* v. *Briscoe* (1891), 138 US 365 (11 S Ct 313, 34 L Ed 931), where, although the instrument was called a trust and the obligor a trustee, the United States Supreme Court found the obligation was an ordinary loan, and the debt was held to have been released by the bankrupt's discharge because not owing by one who acted as a fiduciary.

[2] Presently CL 1948, § 500.1456 (Stat Ann 1957 Rev § 24.11456).

insurance agent who collects premiums acts in a "fiduciary capacity."

We agree with the plaintiff that no valid distinction can be drawn between the cited Michigan cases and this one based on the fact the fiduciary obligation in those cases is statutory and in this case contractual. An express, so-called technical trust of the kind spoken of in the leading case of *Chapman v. Forsyth* (1844), 43 US (2 How) 202 (11 L Ed 236)—where the United States Supreme Court ruled the statutory exception contemplates that kind of trust and not one implied in law[3]—can arise as well by contract as by statute. The defendant here agreed to "hold in trust" collections from account debtors. The statute says insurance agents hold such collections in a fiduciary capacity. The two wordings are homologous, and convey the same meaning. The result in this case would not be different if the assignment before us had expressly declared that the assignor collects the assigned accounts in a "fiduciary capacity."

In *Chapman* v. *Forsyth, supra,* the United States Supreme Court held that a commission merchant and factor who sells his principal's goods and retains the money is not a fiduciary (43 US 208, 11 L Ed 238):

"In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the *relation* spoken of in * * * the act." (Emphasis supplied.)

Also holding the bankrupt was not acting as a fiduciary, see *Hennequin* v. *Clews* (1884), 111 US 676 (4 S Ct 576, 28 L Ed 565), where the bankrupt

---

[3] See *Bryant* v. *Kinyon* (1901), 127 Mich 152.

appropriated the creditor's collateral hypothecated to secure a loan the bankrupt had made to another; and *Crawford* v. *Burke* (1904), 195 US 176 (25 S Ct 9, 49 L Ed 147), where stockbrokers who bought and sold for the creditor misappropriated securities being held as pledge and security for the creditor's debt to the stockbrokers; and *Noble* v. *Hammond* (1889), 129 US 65 (9 S Ct 235, 32 L Ed 621), where the bankrupt collected money and was to keep it until "called for."

We read the declarations of the United States Supreme Court to preclude transformation of an ordinary commercial indebtedness arising when a creditor chooses to extend credit into a non-dischargeable fiduciary debt by the simple expedient of employing an artful draftsman to document the matter.[4] It is the character of the debt-relationship, not its form, which is determinative.

It is indeed difficult to reconcile or distinguish the decided cases.[5] We do not undertake to do so.

---

[4] See *In re Butts* (1903), 120 F 966, and *American Agricultural Chemical Company* v. *Berry* (1913), 110 Me 528 (87 A 218), where the rule of *Chapman* v. *Forsyth, supra,* was followed although the factor agreed to hold unsold goods and proceeds thereof "in trust." Contra: *South Atlantic Guano Co.* v. *Childs* (1924), 211 Ala 637 (101 So 445); *Willcox-Ives & Co.* v. *Leverett* (1918), 128 SC 377 (123 SE 101).

[5] Compare *Shapiro* v. *Marzigliano* (1956), 39 NJ Super 61 (120 A2d 490), with *Morgan* v. *American Fidelity Fire Ins. Co.* (CA 8, 1954), 210 F2d 53.

See, also, *Hamby* v. *St. Paul Mercury Indemnity Company* (CA 4, 1954), 217 F2d 78, 80, declaring a distinction between those who occupy "under the law a fiduciary relationship" (*i.e.,* a real estate agent entrusted with money for a "specific purpose") and the implied trust or constructive trust held insufficient in *Hennequin* v. *Clews, supra,* and *Noble* v. *Hammond, supra*; contrast *Young* v. *Clark* (1907), 7 Cal App 194 (93 P 1056).

Similarly holding the discharge not to be a bar, see *Airo Supply Co.* v. *Page* (1954), 2 Ill App 2d 264 (119 NE2d 400) (embezzling bookkeeper); *Williams* v. *Virginia-Carolina Chemical Co.* (1913), 182 Ala 413 (62 So 755) (express trust to collect notes and mortgages); *American Surety Company of New York* v. *Greenwald* (1946), 223 Minn 37 (25 NW2d 681) (insurance agent). Contra: *Emery & Kaufman* v. *Heyl* (1955), 227 La 616 (80 So 2d 95) (insurance agent).

Defendant's indebtedness to the plaintiff arose when the plaintiff chose to extend credit to the defendant for goods and accounts receivable which it sold the defendant. *Davis* and the earlier United States Supreme Court cases teach us that one incurring such a debt does not do so in a fiduciary capacity even if the agreement between the parties, security or otherwise, whatever its form or verbiage, is later deliberately violated by the debtor.

The defendant's bankruptcy is a typical commercial insolvency, the defendant a typical debtor. The purpose Congress sought to achieve in enacting the bankruptcy act—the release of the typical debtor from his obligations so that he may start anew[6]—would be defeated if ordinary commercial transactions could be made into trusts barring release of debts arising therefrom simply by use of correct jargon. The Congress did not intend that the scope of the release afforded by a bankruptcy discharge depend on the skill of the draftsman, but on the substance of the matter.[7]

Affirmed. Costs to defendant.

LESINSKI, C. J., and ANDREWS, J., concurred.

Generally, see 9 Am Jur 2d, Bankruptcy, § 802, p 602; 8B CJS, Bankruptcy, § 578, p 94 *et seq.*; 1 Collier on Bankruptcy (14th ed, 1968), § 17.24[4], p 1709.

[6] Compare *Local Loan Co.* v. *Hunt* (1934), 292 US 234, 245 (54 S Ct 695, 78 L Ed 2d 1230).

[7] Plaintiff makes no claim that the defendant's appropriation of the plaintiff's collateral amounted to a "willful and malicious" injury to the plaintiff's property. The liability of one causing such an injury to another's property is not barred by a discharge in bankruptcy. § 17(a)(2) Bankruptcy Act (11 USC § 35). Compare *Money Corporation* v. *Draggoo* (1936), 274 Mich 527, *Continental Live Stock Co.* v. *King* (1938), 283 Mich 495, and *Davis* v. *Aetna Acceptance Co.*, *supra*, with *Probst* v. *Jones* (1933), 262 Mich 678, *Tudryck* v. *Mutch* (1948), 320 Mich 86, and *McIntyre* v. *Kavanaugh* (1916), 242 US 138 (37 S Ct 38, 61 L Ed 205).