In re Robert Richard PEHKONEN,
Bankrupt.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin, Plaintiffs,

v.

Robert Richard PEHKONEN, Defendant.

Bankruptcy No. B 78–298.
Complaint No. 805.

United States Bankruptcy Court,
N. D. Iowa,
Cedar Rapids Division.

Nov. 27, 1981.

Lowell H. Forte, Cedar Rapids, Iowa, for plaintiffs.

H. Nick Gloe, Cedar Rapids, Iowa, for defendant.

Findings of Fact, Conclusions of Law, and ORDER, with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is Plaintiff's Complaint challenging the dischargeability of a debt owed to them by Defendant, Robert Richard Pehkonen. Attorney Lowell H. Forte of Cedar Rapids, Iowa, represented the Plaintiff and Attorney H. Nick Gloe of Cedar Rapids, Iowa, represented the Defendant, and, the matter having been fully submitted, the Court now makes the following Findings of Fact, Conclusions of Law, and Order:

## FINDINGS OF FACT

1. On December 1, 1970, American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin (hereinafter collectively referred to as "American") and Robert Richard Pehkonen (hereinafter "Debtor") became associated through the execution of a standardized Career Agent's Agreement (hereinafter the "Agreement").

2. The Agreement provided that the Debtor would sell insurance policies and collect premiums on policies for American, and that American would compensate the Debtor according to a schedule incorporated into the Agreement.

3. On January 1, 1975, American and Debtor amended the Agreement through the execution of a standardized Career Agent's Advance Compensation Plan.

4. On December 16, 1976, Debtor tendered his resignation to American by letter. American cancelled Debtor as an agent effective December 31, 1976.

5. American computed a balance of $6,513.40 (hereinafter the "Debt") owing to it on its account with Debtor. The Debt consisted of monies owing American with respect to premiums owing it on policies written through Debtor. The sum due was computed on the basis of premiums that should have been paid, not on premiums *actually collected* by the Debtor.

6. Debtor has failed to make any payment on the Debt owing to American.

## CONCLUSIONS OF LAW

1. Under Section 17(a)(4) of the Bankruptcy Act, a debt created by the defalcation of a debtor acting in a fiduciary capacity is nondischargeable.

2. A debt is not created by a defalcation of a debtor acting in a fiduciary capacity in the absence of a breach of an express trust.

3. An intention to create an express trust may be ascertained by a consideration of the parties' words and conduct.

4. The creditor has the burden of establishing the facts essential to support a conclusion that the parties intended to create an express trust.

5. The agreement between the parties was not an express trust.

6. The Defendant was not a fiduciary within the meaning of Section 17(a)(4) of the Bankruptcy Act.

## ORDER

IT IS THEREFORE ORDERED that American's Complaint be denied and dismissed.

## MEMORANDUM

American and Debtor have stipulated to the facts in this action. The legal issue is whether a clause within the Agreement purportedly establishing a fiduciary rela-

tionship between American and Debtor with respect to premiums received by Debtor on behalf of American renders the Debt to American nondischargeable.

## DIVISION I

■ American's Complaint alleges that the Debt is nondischargeable pursuant to Section 17(a)(4) of the Bankruptcy Act of 1898 (as amended), 11 U.S.C. § 35(a)(4). The Supreme Court has narrowly and strictly construed § 17(a)(4)'s exception to discharge for fraud while acting in a fiduciary capacity. *Hennequin v. Clews*, 111 U.S. 674, 4 S.Ct. 576, 28 L.Ed. 565 (1884); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). A strict construction is consistent with the Act's basic purpose of giving a debtor a fresh start in his economic life, free of the pressures of pre-existing debts. *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). Consistent with that purpose, the plaintiff who challenges the dischargeability of a debt under § 17 bears the burden of proof[1].

Section 17(a)(4) provides:

A discharge in bankruptcy shall release a bankrupt from all his provable debts ... except such as...

(4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity. 11 U.S.C. § 35(a)(4)

To establish that a debt falls within the § 17(a)(4) exception to dischargeability, a creditor must prove (i) that the debtor was acting as an officer or in a fiduciary capacity, and (ii) that the debt was created by the debtor's fraud, embezzlement, misappropriation, or defalcation.

## DIVISION II

■ American maintains that its Debt was created by the defalcation of the Debt-

or while the latter was acting in a fiduciary capacity. A "fiduciary capacity" exists "when the business which [a person] transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part."[2] For purposes of § 17(a)(4), the establishment of a fiduciary relationship requires that the relationship of the parties must exhibit the characteristics of a traditional trust relationship and that the fiduciary duties existed before the act of wrongdoing and not as a result of it (thus excluding constructive or resulting trusts). *In re Pedrazzini*, 644 F.2d 756 (9th Cir. 1981). Under the Bankruptcy Act, only "express or technical trusts" establish the fiduciary relation contemplated by § 17(a)(4). *Noble v. Hammond*, 129 U.S. 65, 69, 9 S.Ct. 235, 237, 32 L.Ed. 621 (1889); *Upshur v. Briscoe*, 138 U.S. 365, 376, 11 S.Ct. 313, 317, 34 L.Ed. 931 (1891); *Morgan v. American Fidelity Fire Ins. Co.*, 210 F.2d 53, 56 (8th Cir. 1954).

The facts of a particular case are the most important consideration in determining the nature of a debt. See *In re Grissom*, 345 F.Supp. 316, 319 (D.Colo.1972). Although the Agreement contains express language purportedly establishing a fiduciary relationship with respect to premiums received by the Debtor, a careful analysis of the facts in this case moves the Court to hold that such language is insufficient to render the Debt nondischargeable under § 17(a)(4) because the same went unheeded by the parties in the course of their dealings under the Agreement.

■ American relies solely on Section 3c of the Agreement to establish an express trust with respect to premiums received by the Debtor. That section provided:

---

**1.** Rule 407 of the Bankruptcy Rules provides that the plaintiff has the burden of proving the facts essential to his objection at the trial of a complaint challenging the dischargeability of a debt.

**2.** *Black Law Dictionary*, 5th ed. 564 (1979).

The agent agrees: to deliver policies and to collect premiums and other monies due the company in accordance with company rules and while in possession of any such money to hold it *in trust* as the absolute property of the company. (emphasis added).

Ordinarily, an express trust is one which is declared in writing. *Hennequin v. Clews, supra,* 111 U.S. 674, 682, 4 S.Ct. 576, 579, 28 L.Ed. 565. However, words by themselves are not sufficient to establish an express trust. An obligation is not turned into one arising from a trust merely because the parties to an agreement have chosen to speak of it as a trust. *Upshur v. Briscoe, supra,* 138 U.S. 365, 375, 11 S.Ct. 313, 316, 34 L.Ed. 931; *Davis v. Aetna Acceptance Co., supra,* 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393. The intention of such parties will be ascertained not only by a consideration of the wording of the agreement but also by a consideration of the parties' course of dealing thereunder. See *Restatement (Second) of Trusts,* § 12g (1959).

## DIVISION III

American and Debtor entered into their association by signing the Agreement on December 1, 1970. Although the Agreement established Debtor as an agent of American, a clause in the Agreement stressed that Debtor was an independent contractor "for all purposes and in all situations." The Debtor conducted his insurance agency from office space leased to him by American. American maintained an account for Debtor which included premiums due the Debtor (less Debtor's commissions and premium shares) and rent. Apparently Debtor was responsible for paying off the balance of this account at the end of each month. The balance ($6513.40) due on the account constitutes the Debt at issue in this case and is characterized by the parties

as consisting of "monies owing [American] in regards to premiums owing [it] on policies written."

■ One indicia of a trust relationship (as opposed to a mere creditor-debtor relationship) is the requirement of a separate bank account for the receipt and holding of trust funds. It is inconsistent with the concept of a trust that a debtor may use the "trust funds" in any manner he desires, such that he has no obligation to segregate the funds and may draw on them for various expenses. *Upshur v. Briscoe, supra,* 138 U.S. 365, 375, 11 S.Ct. 313, 316, 34 L.Ed. 931; *In re Penn Central Transportation Company,* 328 F.Supp. 1278, 1279 (E.D.Pa. 1971); *In re Sidney J. Paley,* 8 B.R. 466, 469 (Bkrtcy., E.D.N.Y.1981) B.C. A trust fund may be distinguished from a debt in the following manner:

If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.
*Restatement (Second) of Trusts,* § 12g (1959)

■ American has made no showing that the Debtor was required to maintain a separate account for premiums received from insured parties. American did not expressly require Debtor to maintain such an account in the Agreement, nor did it cite any company policy or rules requiring the Debtor to so segregate the funds.[3]

A second aspect of the relationship between the parties which is inconsistent with a finding of a fiduciary relationship is the apparent billing practice of American. The Debtor appears to have been required to

---

**3.** Indeed, there is some suggestion in the record that American knew that its monthly account with Debtor was settled with a check from a commingled business account. Since the account balance which constitutes the Debt includes both premiums due *and* rent, the Debtor's payments upon the account would neces-

sarily have entailed some commingling unless two checks were made out by the Debtor, one from the trust account for the trust funds and another from a business account for rent and unreceived premiums. The Court was presented with no evidence establishing that any such practice was followed in this case.

pay an amount each month equal to premiums payable for that period rather than simply remitting premiums actually received. If Debtor was required to pay a sum greater than premiums he had received up to that date, he was not merely remitting a trust fund. The Debtor was in effect making American a loan for premiums due which had not been timely paid. Apparently all that American was concerned about was being paid in full, regardless of how much the Debtor had actually received in premiums.

American has offered no proof that any of the premiums which constitute its Debt were received by the Debtor prior to this action.

In the view of the Court's factual inferences and conclusions,[4] it must conclude that the relationship between American and Debtor was nothing more than an ordinary commercial creditor-debtor relationship.[5]

## DIVISION IV

This case can be distinguished from *Morgan v. American Fidelity Fire Ins. Co.*[6], *supra*, 210 F.2d 53, where the Eighth Circuit Court of Appeals held that a trust clause in an insurance agency agreement similar to the agreement clause here at issue gave rise to a fiduciary relationship under the facts of that case. In *Morgan*, evidence was produced to show that the defendant had actually *received* the premiums which were the sum of his debt to the insurance company. There was no suggestion in *Morgan* that the defendant had been responsible for paying an amount equal to premiums payable, but not yet received. Therefore the relationship between the parties had none of the flavor of a creditor-debtor relationship which is apparent in the case at bar.

Moreover, though the *Morgan* court reached its holding substantially through reliance on the trust clause of the agreement, the court emphasized that its result had not ignored the established principles of the law of trusts. *Id.*, 210 F.2d at 56. This Court similarly relies on established trust principles in holding that the conduct of the parties was inconsistent with a finding of a trust relationship between them.

A case apposite with the case at bar is *In the Matter of Frank F. Clark*, 2 B.C.D. 199 (W.D.Mich.1975). In that case, the agreement between the insurance company and the agency purportedly established a fiduciary relationship with respect to premiums received by the agency. However, the insurance company billed the agency for premiums to be received that month rather than having the agency remit those premiums actually received. In addition, the premiums received by the agent were commingled with other funds of the agent in a general account. The court held that the parties knowingly disregarded the trust provision in their contract in the course of their business relationship, and that such relationship was thus no more than a mere creditor-debtor relationship.

 As a matter of policy, a trust clause in a commercial contract is inherently suspect and should be avoided if not carefully followed. A commercial debtor should be in no worse shape after a bankruptcy proceeding than other debtors merely because of some artful drafting in a business contract. As one court commented:

> The defendant's bankruptcy is a typical commercial bankruptcy, the defendant a typical debtor. The purpose Congress

---

4. It should be emphasized that some of the factual inferences and conclusions the Court has arrived at in this opinion are the result of American's failure to establish a record that would permit the Court to reach contrary inferences and conclusions (i. e., American has failed to meet its burden of proof).

5. Since the Court fails to find a fiduciary relationship between American and the Debtor, the Court expresses no opinion as to whether or

not the Debt between the parties was created by the defalcation of the Debtor.

6. *Morgan* was an appeal from a District Court's opinion that granted a money judgment to the plaintiff *in a form* such that it could not be discharged in a bankruptcy proceeding. 210 F.2d 53, 55. The procedural posture of the original action was therefore different from the case at bar.

sought to achieve in enacting the Bankruptcy Act—the release of the typical debtor from his obligations so that he may start anew—would be defeated if ordinary commercial transactions could be made into trusts barring released debts arising therefrom simply by use of correct jargon.[7]

For the reasons stated above, the Court concludes that American's Complaint challenging the dischargeability of the Debt must be dismissed.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for Creditors' Committee.

Stroock & Stroock & Lavan, New York City, for debtor.

Harold Jones, New York City, office of U. S. trustee.

Barry J. Schwartz, New York City, for Securities and Exchange Com'n.

---

7. *Wayne Creamery v. Clements*, 14 Mich.App. 50, 55; 165 N.W.2d 508 (1968).