In the Matter of SHULMAN TRANS-PORT ENTERPRISES, INC.
Bankrupt.

In the Matter of SHULMAN AIR FREIGHT, INC., Bankrupt.

PAN AMERICAN WORLD AIRWAYS, INC., on its own behalf and on behalf of all international common carriers by air similarly situated, Plaintiff,

v.

SHULMAN TRANSPORT ENTERPRIS-ES, INC., Shulman Air Freight, Inc., and Continental Bank, Defendants.

Bankruptcy Nos. 78–B–1402, 78–B–1403.

United States Bankruptcy Court, S. D. New York.

June 30, 1982.

---

Stroock & Stroock & Lavan, formerly known as Krause, Hirsch & Gross, New York City, for trustee of Shulman Air Freight, Inc.; Arthur N. Ohringer and John Scheffel, New York City, of counsel.

Jacob L. Oliner, New York City, for Pan American World Airways, Inc.

Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Continental Bank; Alan C. Gershenson and Morton Newman, Philadelphia, Pa., of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

On August 2, 1978 Shulman Transport Enterprises, Inc., and Shulman Air Freight, Inc., (collectively Shulman or debtors) came to this court for the protection afforded by Chapter XI of the now repealed 1898 Bankruptcy Act, §§ 301 *et seq.*, 11 U.S.C. §§ 701 *et seq.* (1976 ed.).[1] This Chapter XI sojourn proved to be short-lived and on November 17, 1978 it was terminated by an order of adjudication pursuant to Section 376, 11 U.S.C. § 776, and its procedural mate in the Bankruptcy Rules, Rule 11–42, 415 U.S. 1031, 94 S.Ct. 3253, 39 L.Ed.2d xlix.

Continental Bank had financed Shulman's pre-petition operations and held a security interest in all of its assets. On August 2 and again on August 16, 1978, orders were entered authorizing Shulman to continue to borrow from Continental Bank, and providing for the giving of a security interest in favor of the bank in Shulman's assets, including its international trade receivables (receivables). Appropriate filings were made pursuant to the provisions of the Uniform Commercial Code.

The receivables were generated by virtue of Shulman's operations as a freight forwarder and consist of fees due to Shulman for the arrangement of transporting goods. Shulman was authorized to operate as an international freight forwarder by virtue of a February 23, 1971 Cargo Agency agreement (IATA Agreement) with the International Air Transport Association (IATA). Pan American World Airways, Inc. (Pan Am) is a carrier member of IATA.

On August 23, 1978, Pan Am commenced an adversary proceeding by filing a complaint, Rule 703, 411 U.S. 1069, 93 S.Ct. 3147, 37 L.Ed.2d lxvi, on behalf of itself and all other international carriers (plaintiffs), seeking a declaratory judgment that the debtor's receivables, attributable to air freight services performed by plaintiffs, are

the property of plaintiffs, held in trust by Shulman, and are not included in the security interest granted to Continental Bank. In support for this claim, plaintiffs point to the IATA Agreement under which Shulman was appointed cargo agent for all carrier members of IATA.

The IATA Agreement provides, in pertinent part, that:

"All monies collected by IATA Cargo Agent for transportation sold hereunder, *are the property of the carrier* . . .

Cargo Agent shall remit to the Carrier such monies at such times, under such conditions and in such currencies as the Carrier may designate . . . and . . . shall be responsible for the payment of any monies due the Carrier . . . whether or not such monies have been collected . . .". (emphasis added)

Ancillary to the filing of the complaint, Pan Am obtained an order directing Shulman to place the proceeds of the receivables in escrow. Pan Am then moved, pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure (F.R.Civ.P.), applicable in adversary proceedings by Rule 723 of the Rules of Bankruptcy Procedure, 411 U.S. 1078, 93 S.Ct. 3154, 37 L.Ed.2d lxx, for an order certifying this adversary proceeding as a class action.

Both Continental Bank and Shulman duly answered. They denied that the receivables are Pan Am's property, and raised various affirmative defenses. Continental Bank moved to dismiss the complaint on jurisdictional grounds, Rule 712, 411 U.S. 1074, 93 S.Ct. 3151, 37 L.Ed.2d lxviii, and both Continental Bank and Shulman opposed Pan Am's motion for class action status. Subsequently, Pan Am moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, applicable by Rule 756, 411 U.S. 1084, 93 S.Ct. 3159, 37 L.Ed.2d lxxii, alleging that the answers filed by Shulman and Continental did not raise triable issues of fact.

---

1. The 1898 Bankruptcy Act was repealed by Section 401(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598. Section 403(a) of these same Title IV amendments makes it clear that cases commenced under the 1898 Act, as this one, will continue to be governed by its provisions. All citations herein are to the 1976 edition of Title 11 of the United States Code (Bankruptcy Act).

Thus, three separate issues emerge from these proceedings: the appropriateness of class action certification; jurisdiction over Continental Bank; and finally, whether under the terms of the IATA Agreement the charges that were included in Shulman's billings for freight services performed by the plaintiff are held in trust for plaintiff. As the material facts are not in dispute, there is no need for the curtain to ascend on a trial. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319 (2d Cir. 1975).

## CLASS ACTION STATUS

■ It is clear that the burden is on Pan Am to establish that this action satisfies each requirement of Rule 23, F.R.Civ.P. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Rule 23 gives the court the discretion to determine whether the class satisfies the prerequisites outlined in the Rule, a determination resting on the particular facts of the case. Under Rule 23(a)(1), Pan Am must show that "the class is so numerous that joinder of the parties would be impracticable". As stated in 3B *Moore's Federal Practice* ¶ 23.05[1] (2d ed.):

"The raison d'etre of the class suit doctrine is necessity which in turn depends upon the question of number".

As Pan Am sees it, the Rule is met because there are twelve to forty potential members of the envisioned class.

■ While there is no magic number that constitutes a class so numerous as to make joinder impracticable, this court is convinced that the number here is too small. There is no evidence that under these facts joinder is impracticable. See, *Matthies v. Seymour Mfg. Co.*, 270 F.2d 365 (2d Cir. 1959), *cert. denied*, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 554 (1960), holding twenty class members did not meet the numerosity requirement.

■ Furthermore, although the Bankruptcy Rules plainly incorporate Rule 23, a bankruptcy court must consider the fact that in most instances class action principles are antithetical to those of bankruptcy.

See, 3B *Moore's Federal Practice* ¶ 23.02[2–5] (2d ed.).

As noted in *In re Society of the Divine Savior*, 15 Fed.R.Serv.2d (Callaghan) 294 (E.D.Wisc.1971), where a creditor in a bankruptcy proceeding sought to impress a trust on certain assets of the debtor, certification would circumvent the stringent requirement that every creditor file his proof of claim in order to participate, Section 57, 11 U.S.C. § 93, by allowing all class members to participate and share in distribution without fulfilling the statutory requirements of the Bankruptcy Act. *Id.* at 298.

As Pan Am has not shown that this court should circumvent this general policy and has not satisfied the criteria of F.R.Civ.P. Rule 23, class action certification is denied.

## THE COURT'S JURISDICTION

■ The defendant, Continental Bank, attacks the jurisdiction of this court, claiming it does not have "plenary" jurisdiction and that it is not the proper forum for the adjudication of plaintiff's claim. It is defendant's position that plaintiff's action is a patent attempt to involve the bankruptcy court in the resolution of conflicting claims between strangers to this bankruptcy proceeding. See, *First State Bank & Trust Company of Guthrie, Oklahoma v. Sand Springs State Bank of Sand Springs, Oklahoma*, 528 F.2d 350 (10th Cir. 1976).

However, the *Guthrie Bank* case, *supra*, has no application to the facts at bar. In that case, two banks sought a determination of their respective rights to certain certificates of deposit which had been issued by the bank and assigned by the debtor to another bank prior to the debtor's Chapter X petition. The trustee conceded that the estate had no interest in these certificates of deposit, and that the administration of the estate would be in no way affected by the bank's conflicting claims. Under these circumstances, the court properly deflected jurisdiction to a more appropriate forum.

However, Continental Bank is no stranger to this erstwhile debtor in possession for it submitted to this court's jurisdiction when it financed the debtor's operations

pursuant to an order of this court, and received a security interest on the assets to be received by the debtor during the administration of the estate.

This court unquestionably has jurisdiction over this action and over the bank. See, *In re Fabric Tree Inc.; Mangel Stores Corp. v. The Official Creditors' Committee of the Fabric Tree, Inc.*, 426 F.Supp. 872 (S.D.N.Y. 1977), *aff'd*, 558 F.2d 1069 (2d Cir. 1977).

## THE TRUST THEORY

The debtor was in the business of freight forwarding, arranging for international air transportation for its customers, acting as middlemen between the common carriers—airlines—and the shippers and consignees—customers. The debtor billed customers for the *total cost* of the air freight services charged by the air carrier, debtor's services in arrangement for transportation and any other charges. All receivables were collected as a lump sum. Although such an arrangement appears to be that of any other wholesaler and supplier, in which case plaintiff is merely an unsecured creditor of debtor, plaintiff relies on the language of the IATA Agreement to support something other than general creditor status.

The existence of a trust is generally determined by gleaning the intent of the parties. A clear separation of funds, an identifiable res to which the trust can attach, is an essential element. *In re Lord's Inc.; Chicago Cutler-Karcher, Inc. v. Maley*, 356 F.2d 456 (7th Cir. 1965); *cert. denied*, 385 U.S. 847, 87 S.Ct. 55, 17 L.Ed.2d 78 (1966); *In re Penn Central Transportation Co.*, 351 F.Supp. 1346 (E.D.Pa.1972); *In re Martin's*, 11 F.Supp. 99 (E.D.N.Y.1935); *In re Pehkonen*, 15 B.R. 577 (Bankr.N.D.Iowa 1981). It has long been established that the mere use of "in trust" or other such language is not determinative. The burden of proof is on Pan Am to establish the existence of a trust. 4A *Collier on Bankruptcy* (14th ed.) ¶ 70.25. This court is convinced this burden has not been met.

*In re Morales Travel Agency*, 667 F.2d 1069 (1st Cir. 1981), is on point. There, Morales was in the business of selling to the public tickets for various airlines. At issue was the existence of a trust under the terms of an IATA passenger sales agency agreement which stated that whatever monies Morales collected "shall be the property of the carrier and shall be held by the Agent in trust for the carrier or on behalf of the carrier, until satisfactorily accounted for to the carrier and settlement made". *Id.*, at 1070. In fact, all sums collected were commingled with Morales' own funds. Morales was adjudged bankrupt, and Eastern Air Lines, its largest creditor, brought an action to recover over $379,000. which it alleged Morales held in trust, and as such, was not property of the estate to be administered by Morales' trustee for the benefit of all creditors.

The Court of Appeals held that the terms of the IATA Agreement were insufficient to give rise to a trust upon the proceeds of the tickets sold. Amongst other things, the court noted the absence of any provision requiring Morales to hold the sums in trust by keeping them separate. Furthermore, the court pointed to Eastern's failure to require segregation thereby estopping it from recovering as:

"... a principal or consignor who allows property to appear that of the agent's or consignee's estate will in the event of the latter's bankruptcy be estopped from recovering that property as against creditors who reasonably relied on such an appearance, ...".

*Id.* at 1073.

Here, too, the self-serving "property" language of the IATA Agreement form is insufficient to establish a trust. There is no requirement in the contract requiring the segregation of air freight charges and neither IATA or its members supervised the business of the debtor or sought segregation of accounts. Indeed, there is no evidence that a trust relationship was intended, as there is no indication that the debtor intended to assume fiduciary duties for the benefit of carriers in the collection of its receivables. *Carlson, Inc. v. Commercial Discount Corp.*, 382 F.2d 903 (10th Cir. 1967).

Clearly, the real purpose of the IATA Agreement was an attempt to insure that

carriers would be paid regardless of the debtor's solvency. Clearly, the parties did not intend to create a trust; but sought merely to secure their payment from Shulman by means of a secret lien in contravention of the Uniform Commercial Code. There is a general bankruptcy policy against such secret interests, *United States v. Speers*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965), and general creditors should not be limited by these endeavors. Pan Am is therefore only entitled to share in this estate *pari passu* with other general unsecured creditors.

In accordance with the foregoing, the motion for certification of a class is denied. The objection to this court's jurisdiction is overruled. The motion for summary judgment in its favor by Pan Am is denied.

However, as there are no issues of fact, the court may grant summary judgment to the other side. This means that Continental Bank must prevail in the matter of the proceeds to the extent those proceeds are subject to the bank's lien.

Submit an order.