In re James Lawrence JONES, Carol Lee Jones, Debtors.

NEW HAMPSHIRE INSURANCE COMPANY and Granite State Insurance Co., Plaintiffs,

v.

James Lawrence JONES, Defendant.

Bankruptcy No. 89–12479.
Adv. No. 89–0488.

United States Bankruptcy Court, E.D. Tennessee.

Aug. 25, 1993.

---

William C. Carriger, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, TN, for plaintiffs.

James R. Paris, Carter, Mabee, Paris & Littleton, Chattanooga, TN, for defendant.

## MEMORANDUM

· JOHN C. COOK, Bankruptcy Judge.

This adversary proceeding is before the court upon the plaintiffs' complaint seeking an order declaring nondischargeable under § 523(a)(4) a certain obligation owed by the defendant to the plaintiffs. The parties submitted this proceeding for decision upon stipulated facts which are set forth as follows.

### I.

The plaintiffs entered into an Agency Agreement with O.W. Hudson Agency, Inc. (herein the "Agency") dated December 11, 1978. The defendant, James Lawrence Jones, was the president, sole stockholder, and sole director of the agency. Mr. Jones was the holder of the Tennessee license as the insurance agent. Mr. Jones personally signed guarantying the performance of the Agency Agreement.

The 1978 Agency Agreement provided in Section 1:

> The Agent has full power and authority to receive and accept proposals for insurance covering such classes of risk as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company, to be held in trust in a fiduciary capacity and be paid to the Company or its duly authorized General Agent as hereinafter provided; and to retain out of the premiums so collected, as full compensation on business so placed with the Company, commissions under such terms and limitations as may from time to time be agreed upon.

The 1978 Agency Agreement also provided in Section 4:

> Accounting of monies due the Company on business placed by the Agent with the Company shall be made either by the Agent or the Company not later than the 15th day of the following month; the balance therein shown to be due to the Company shall be paid not later than 45 days after the end of the month for which the account is rendered.

The parties entered in to a subsequent Agency Agreement with an effective date of January 1, 1989. The 1989 Agency Agreement provided in Section 3:

> The Agent is authorized and responsible for the collection of all premiums on insurance placed with the Company. Such premiums are to be held in trust in a fiduciary capacity, and are to be paid to the Company as hereinafter provided. The Agent is further authorized to retain out of premiums payable, except on direct bill business, commissions in accordance with addenda to this Agreement, as full compensation for his services in connection with the production and service of insurance placed with the company. The Agent agrees to refund promptly to the Company commissions retained by him or paid by the Company on premiums refunded on any policy by reason of cancellation or otherwise.

The 1989 Agreement also provided in Section 5:

> Accounting of monies due the company on business placed by the Agent with the Company shall be made either by the Agent or the Company not later than the 15th day of the following month; the balance therein shown to be due to the Company shall be paid not later than 45 days after the end of the month for which the account is rendered.

Pursuant to the Agency Agreement, Mr. Jones collected insurance premiums for policies issued by the plaintiffs. Of the net premiums collected, $191,628.31 were not remitted to the plaintiffs, as set forth in the plaintiffs' Statement of Account. All such amounts set forth above were collected by Mr. Jones prior to January 1, 1989. Plaintiffs terminated Mr. Jones' Agency Agreement effective January 9, 1989.

During the time the defendant did business with the plaintiffs, the Agency maintained a common account in which the insurance premiums from the various policies were commingled and from which the Agency paid its operating expenses, salaries, etc.

## II.

The plaintiffs contend the obligation owed to them by the defendant should be declared nondischargeable under the provisions of § 523(a)(4) of the Bankruptcy Code. The plaintiffs have the burden of proving the obligation nondischargeable under § 523(a)(4) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 523(a)(4) provides in relevant part as follows:

> § 523. Exceptions to discharge.
>
> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity....

11 U.S.C.A. § 523(a)(4) (West 1993).

In determining whether the defendant's obligation to the plaintiffs is nondischargeable under § 523(a)(4), the court must decide, *inter alia,* whether the plaintiffs proved the existence of a fiduciary capacity. It is well settled that such capacity arises only where an express or technical trust exists. *Davis v. Aetna Acceptance Corp.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Capitol Indem. Corp. v. Interstate Agency (In re Interstate Agency),* 760 F.2d 121, 124 (6th Cir.1982); *Burleson Constr. Co. v. White (In re White),* 106 B.R. 501 (Bankr.E.D.Tenn. 1989); *see* COLLIER ON BANKRUPTCY § 523.-14[c] (15th ed. 1991). State law governs whether an express trust or technical trust has been created. *Capitol Indem. Corp. v. Interstate Agency (In re Interstate Agency),* 760 F.2d at 124.

Under Tennessee law, which generally appears to follow the common law governing express trusts, the existence of a trust requires proof of three elements: (1) a trustee who holds trust property and who is subject to the equitable duties to deal with it for the benefit of another; (2) a beneficiary to whom the trustee owes the equitable duties to deal with the trust property for his benefit; and (3) identifiable trust property. *Kopsombut–Myint Bud-*

*dist Ctr. v. State Board of Equalization,* 728 S.W.2d 327, 333 (Tenn.App.1986) *citing* G.G. Bogert & G.T. Bogert, The Law of Trusts and Trustees § 1, at 6 (rev. 2d ed. 1984) and Restatement (Second) of Trusts § 2 comment h (1957). The question thus presented is whether the facts stipulated in this proceeding establish the existence of the three elements of a trust by a preponderance of the evidence. The court is of the opinion they do not.

"The use of words of trusteeship is not conclusive as to the expression of an intent to have a trust, where incidents foreign to that relationship appear to have been contemplated." G.G. Bogert & G.T. Bogert, The Law of Trusts and Trustees § 45, at 316 (2d ed. 1965). Many courts have rejected the argument that certain funds are trust funds merely because language in a pertinent agreement states the funds were to be held in trust. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Morales Travel Agency,* 667 F.2d 1069, 1071 (1st Cir.1981); *Lord's, Inc. v. Maley,* 356 F.2d 456, 459 (7th Cir.1965); *Lemars Mutual Ins. Co. v. Cutler (In re Cutler),* 74 B.R. 712, 713 (N.D. Iowa 1987); *Missouri Dep't of Conservation v. Schnitz (In re Schnitz),* 52 B.R. 951, 955 (W.D.Mo.1985); *Wilmington Trust Co. v. Martin (In re Martin),* 35 B.R. 982, 985 (Bankr.E.D.Pa.1984); *Barclays American/Business Credit v. Long (In re Long),* 44 B.R. 300, 305 (Bankr. D.Minn.1983); *Great American Ins. Co. v. Storms (Matter of Storms),* 28 B.R. 761, 764 (Bankr.E.D.N.C.1983); *Pan American World Airways v. Shulman Transport Enters.,* 21 B.R. 548 (Bankr.S.D.N.Y.1982). As Judge Bare pointed out in *Wickham v. United American Bank (In re Property Leasing & Management),* 50 B.R. 804 (Bankr.E.D.Tenn.1985), "[t]he obvious concern ... is to prevent parties in an essentially debtor-creditor relationship from invoking talismanic phraseology—in a complete absence of genuine trust elements and obligations—solely as a means of protecting or securing the payment of a debt." *Id.* at 808.

■ The intention of the parties will be ascertained not only by a consideration of the wording of the agreement, but also by a consideration of the parties' course of dealing under the agreement. *American Family Mutual Ins. Co. v. Pehkonen (In re Pehkonen),* 15 B.R. 577, 581 (Bankr. N.D.Iowa 1981); Restatement (Second) of Trusts § 12g (1959). It is, in other words, the substance and character of the debt relationship, rather than descriptive contract jargon, that determines if in fact a fiduciary relationship exists. *Auto Owners Ins. Co. v. Littell (In re Littell),* 109 B.R. 874, 880 (Bankr.N.D.Ind.1989); *Ford Motor Credit Co. v. Gallaudet (In re Gallaudet),* 46 B.R. 918 (Bankr.D.Vt.1985); *Ford Motor Credit Co. v. Talcott (In re Talcott),* 29 B.R. 874 (Bankr.D.Kan.1983).

■ One indication of a trust relationship is a requirement of a separate bank account for the receipt and holding of trust funds. "It is inconsistent with the concept of a trust that a debtor may use the 'trust funds' in any manner he desires, such that he has no obligation to segregate the funds and may draw on them for various expenses." *American Family Mutual Ins. Co. v. Pehkonen (In re Pehkonen),* 15 B.R. at 581. The Restatement provides guidance on how a trust fund may be distinguished from a debt:

> If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

Restatement (Second) of Trusts § 12g (1959).

The plaintiffs have not shown the defendant was required to maintain a separate account for premiums received from insured parties. The agreement between the plaintiffs and defendant did not require such an account and in fact the premiums were deposited into the defendant's common business account where they were commingled with other funds from which

the defendant's agency paid its operating expenses.

Another aspect of the relationship between the parties that is inconsistent with a finding of fiduciary relationship is the billing practice described in the contract between the parties. According to the contract, an accounting of moneys due the plaintiffs on business placed by the defendant with the plaintiffs was due not later than the 15th day of the following month and the balance shown to be due the plaintiffs was to be paid not later than forty-five days after the end of the month for which the account was rendered. Hence, it appears the defendant was required to pay an amount each billing period equal to the premiums payable for that period rather than simply remitting premiums actually received. Such an arrangement is more akin to a debtor-creditor relationship than a trustee relationship. *See Lemars Mutual Ins. Co. v. Cutler (In re Cutler)*, 74 B.R. 712 (N.D. Iowa (1987); *American Family Mutual Ins. Co. v. Pehkonen (In re Pehkonen)*, 15 B.R. 577 (Bankr.N.D. Iowa 1981); *Great American Ins. Co. v. Storms (Matter of Storms)*, 28 B.R. 761 (Bankr. E.D.N.C.1983).

The plaintiffs rely upon *Capitol Indem. Corp. v. Interstate Agency (In re Interstate Agency)*, 760 F.2d 121 (6th Cir.1985), in arguing the insurance premiums here constituted trust funds. *Interstate Agency*, relying upon Michigan law, held that premium payments received by an insurance agency have the status of trust funds for the benefit of the insurance principal. Because a Michigan statute created the trust status between the insurance agency and insurance principal, the court was not called upon to analyze whether such a status would have existed absent the state statute.[1]

The plaintiffs also rely upon *Morgan v. American Fidelity Fire Ins. Co.*, 210 F.2d 53 (8th Cir.1954). In *Morgan*, the Eighth Circuit Court of Appeals concluded that a trust clause in an insurance agency agreement, similar to one at issue here, created a fiduciary obligation. In *Morgan*, the agency contract required the agent to remit the premiums he actually received to the insurance company, after deducting his commission. Because the moneys were required to be immediately forwarded by the agency to the insurance company, the funds were to be treated more as trust funds than the premiums collected here. Here, the contract required the defendant to account for all moneys due the plaintiffs on business placed by the defendant with the plaintiffs and to pay the balance owed, regardless of the amount of the premiums actually collected. This procedure, coupled with the fact that the premiums were commingled in the defendant's common account, suggests a debtor-creditor relationship rather than a trust relationship. *Lemars Mutual Ins. Co. v. Cutler (In re Cutler)*, 74 B.R. at 713; *American Family Mutual Ins. Co. v. Pehkonen (In re Pehkonen)*, 15 B.R. at 582.

In sum, the plaintiffs having failed to prove by a preponderance of the evidence that the premiums collected by the defendant were funds to be held in an express trust with attendant fiduciary obligations on the part of the defendant within the meaning of § 523(a)(4), the obligation owed by the defendant to the plaintiffs in this action is dischargeable. An order will enter in accordance with this memorandum.

---

1. TENN.CODE ANN. § 56–6–154 (1989) provides that any money which an insurance agent receives for procuring insurance shall be held in a fiduciary capacity. That statute, however, did not become effective until January 1, 1989. Because the collection of premiums in this proceeding occurred prior to January 1, 1989, the statute was not in effect with respect to those moneys.