**M. V. Coyne, Appellant, v. South Shore De Luxe Laundry, Appellee.**

**Gen. No. 40,411.**

Opinion

filed March 29, 1939.

LEVISOHN & LEVISOHN, of Chicago, for appellant.

SWANSON & DODGE and PAUL S. McCABE, both of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

In an action in forcible entry and detainer brought in the municipal court of Chicago for possession of the premises known as 4720–22 Cottage Grove Ave., in Chicago, the court found the issues for defendant and entered judgment against plaintiff for costs, and this appeal followed.

For a period of two years prior to April, 1936, a Chicago real estate man by the name of Milton Moses collected the rents and acted as the agent for the premises, which consisted of a one-story brick building located on the south side of Chicago. In all transactions he recognized Mr. H. C. Dana, engaged in the loan and insurance business at Kewanee, Illinois, as his principal. In the spring of 1936, the store was vacant, and there was correspondence between the agent and the principal with respect to securing a tenant. On March 11, 1936, Moses wrote Dana that he had an offer from a laundry concern to rent the premises for a term of five years at a rental of $50 per month for one year and $75 per month for the remainder of the term. In the letter he indicated that in addition to expenditures that the proposed tenant would make at his own expense, it would be necessary for the lessor to spend $1,196 in order to make necessary repairs. He added that while the proposal did not sound attractive, ''it is apt to cost almost as much to keep the premises insured without an occupant.'' He concluded by stating that the applicant required a prompt decision as the latter had to make up his mind whether to move or to renew the lease on his present location. On March 13, 1936, Dana replied by letter, as follows:

"I talked the matter over with Mrs. Scott this morning. We cannot see how the Scott Estate can raise the money to pay $1,196.00 for work on that building, as we haven't any money on hand. Can you make a lease for five years—the man to do all the improving? In that way, perhaps we can get some fellow who will stick. We might be able to raise the $315 for the roof—he to do everything else—the rental per month to be applied on the repair bill." On March 24, 1936, Moses directed a letter to Dana, in which he stated that he had several conversations with Simon Volk of the South Shore DeLuxe Laundry, the proposed tenant. The agent told Dana that he had been trying hard to get the proposed tenant to assume all of the repairs, and that on that day the tenant had agreed to do so, the rental to be $50 per month for five years, with rent abatement during the first six months of the first year and the first three months of the second year. He further stated that the difference between the proposal of the tenant and the original offer would about equal the estimated cost of the repairs which the landlord was asked to make. The letter concluded by stating that "I believe his offer should be accepted. Any one who would undertake to put this building in a good usable condition is doing the property a real service. This is a better lease than I have anticipated getting, and I would not let it get away. Mr. Volk is going to decide on a place within a few days, therefore, I must let him know not later than Thursday, tomorrow if possible, so I would suggest that you wire me if acceptable." In chronological order, apparently there was a telephone conversation between Dana and Moses, for in a letter dated March 25, 1936, from Dana to Moses, the former referred to a telephone conversation, without disclosing the contents, and added that "some precaution should be taken to prevent a mechanic's lien

being placed on that building, if our new tenant did not pay the bills.'' On March 30, 1936, Dana wrote Moses acknowledging the receipt of past due water bills which had been forwarded by the agent and inclosing a check to the agent for the purpose of paying the bills. The letter continued as follows: ''It does seem as if the property is going to drain the Scott Estate dry. There is no use of making a lease with this new man unless it is going to stick. Do the best you can for us, but if he is a man of no means and just a roustabout, it would be another case of throwing it up, I am afraid.'' On April 4, 1936, Moses wrote Dana and inclosed a check for $50 received from defendant to cover rent for the seventh month of the lease, being November, 1936. The letter concluded with the following paragraph:

''The new tenant is already at work on the building, and expects to be operating by May first. These people started in their present quarters six years ago, and have expanded as much as the building will permit. It is impossible to guarantee that any one will stick, all they can do is work hard and do their best. The last party overworked, had a nervous breakdown, and of course had to crash. In this case there are several partners, their references are satisfactory, and they appear well-intended, and far from being roustabouts. They will have a large investment in equipment, besides spending the large sum necessary on the building. Even if their rent were free, you would be money ahead by reason of their occupancy. The insurance has been cancelled, but will be restored because you now have a tenant. I believe they will make a good tenant. My charge to the Estate for the lease will be $25.00, as I had some expenses in connection with the deal. Otherwise, I would have let the last fee cover

this deal also.'' On May 11, 1936, Dana wrote Moses as follows:

''Mrs. Scott was in the office this afternoon and asked me if I had received the lease on the Cottage Grove property. I promised her that I would write you and ask how you were getting along with it. You sent us one month's rent, I believe for November. It seems to me that he should pay the six months' rent during the first six months. We would then have some hold on it. Would be pleased to hear from you at your earliest convenience.'' On May 16, 1936, Moses wrote Dana, the last paragraph of this letter reading as follows:

''I am enclosing the lease on the property, which is according to the proposal I submitted to you under date of March 24th. You will recall that originally the tenant wanted you to spend about $1200.00 before he would rent it, and when you objected to this, I arranged to have the tenant spend this money, allowing him the first six months' rent, and three months in the second year, also eliminating the increase in the rent after the first year. The extra allowance amounted to $1350.00, spread over five years. So far the tenant has fulfilled his obligation completely, in fact, appears to have had to do much more than he anticipated. He has told me it will take him five years to catch up on all the money he expended and I believe it. I think this is more hold on the tenant than you could expect. I do not think one tenant in a hundred would do what he has done, in fact, he had to make his decision so quickly that he missed noticing some of the damage, to your benefit.'' On June 9, 1936, Dana wrote Moses and inclosed a check for $25 ''for leasing the Cottage Grove Avenue property.'' Thereafter, the lease was mailed to Dana on April 4, 1936.

The lease which was admitted in evidence over plaintiff's objection is on a printed form, and recites that

it is between Milton Moses, agent, and defendant corporation, covering the premises for a term commencing May 1, 1936, and ending April 30, 1941, at a rental of $50 per month. It provides that no rent need be paid to the lessor prior to November 1, 1936, and that no rent shall be paid for the months of May, June and July, 1937. It also contains a typewritten provision requiring the lessee to furnish the lessor with waivers of mechanic's liens. It will be observed that the lease was drawn substantially in accordance with the instructions in the correspondence. The lease was signed by the corporation, by its officers, and by "Milton Moses, Agent." On the reverse side of the lease appears the usual "Lessor's Assignment" form, signed by "Milton Moses, Agent," and dated April 1, 1938. Such assignment acknowledges the receipt of $1. The space for inserting the name of the assignee remains blank.

On the trial, counsel for plaintiff stated that there was no question about the title prior to the lease. Apparently, plaintiff became the contract purchaser of the property about April 1, 1938, at which time the assignment of the lease was executed by Moses, who thereupon delivered the lease with the assignment, in blank, to James B. Hood, then the attorney for plaintiff. At the trial, the lease was produced by plaintiff and introduced as an exhibit by defendant. At the commencement of the trial, defendant's attorney demanded that plaintiff produce the contract under which plaintiff was purchasing the property. At that time, plaintiff's attorney stated that he did not have the agreement. Counsel for defendant later renewed his demand that plaintiff produce the contract, to which counsel for plaintiff replied that the notice to produce was served on him at 4 p. m. the day before, and stated that "I haven't such a contract here." The evident pur-

pose of defendant in demanding that the contract be produced was to show, as he inferred, that the contract contained a recognition of the lease. The trial concluded without the contract being produced. Hence, the record is silent as to whether the same did contain any language that would amount to a recognition of the lease. On April 11, 1938, a written notice directed to defendant as ''Lessee of 4720–22 Cottage Grove Ave., Chicago, Ill.,'' signed by M. V. Coyne, owner, by James B. Hood, duly authorized agent and attorney, was served on defendant, reading as follows:

''You are hereby notified that in consequence of your default in each of the following: 1. Failure to pay for plate glass insurance; (2) Failure to replace broken windows; (3) Failure to repair or replace roof; (4) Failure to repair or replace plastered walls and ceiling; (5) Failure to keep basement from being flooded; (6) Failure to keep the demised premises in repair; of the premises now occupied by you under a lease dated March 28th, 1936, demising the above mentioned premises at 4720–22 Cottage Grove Avenue, Chicago, Illinois, I have elected to determine your lease, and you are hereby notified to quit and deliver up possession of the same to me within ten days of this date.'' Plaintiff testified that Mr. Hood was her attorney. The notice recognizes the existence and validity of the lease and seeks to terminate the same because of claimed breaches. On April 8, 1938, Milton Moses sent the following letter to defendant:

''You are hereby notified that the lease dated March 28, 1936, demising the above premises to you from the first day of May, 1936, to the thirtieth day of April, 1941 and executed by me as agent has been assigned to M. V. Coyne, who has purchased the premises, and you are instructed to take up any matters concerning said lease with Mr. Coyne.

"Mr. James B. Hood, 188 West Randolph Street, is attorney for Mr. Coyne and is handling the property for him."

On the trial, plaintiff called to the stand as a witness, the president of the corporation, and by her testimony, established the relationship of landlord and tenant between plaintiff and defendant. The witness stated that in April, 1938, defendant paid to plaintiff the sum of approximately $200, "to take care of rent and some interest in a distressed proceeding." Defendant introduced a receipt dated April 14, 1938, signed by plaintiff, which reads as follows: "Received of Paul S. McCabe, atty. for South Shore Laundry, the sum of $208, and for rent for the premises located at 4720-22 Cottage Grove Ave., being for the months of February, March and April, 1938, and in full of custodian fees by virtue of Distress of Rent. It is agreed that said suit, No. 953757, Municipal Court, M. V. Coyne v. South Shore DeLuxe Laundry, be dismissed no cost, and said matters adjusted between the parties regarding past due rent. Notice of April 11, 1938, is hereby withdrawn." Plaintiff then changed her position, and on April 26, 1938, served on defendant a notice that the tenancy would be terminated on June 1, 1938, and that defendant would be required to surrender possession of the premises to plaintiff on that date. Defendant paid the rent for April and May and tendered the rent for June. Plaintiff, however, refused to accept the June rent, and on June 3, 1938, instituted her action for possession of the premises under the forcible entry and detainer statute.

The chief criticism leveled at the judgment is that the lease cannot bind plaintiff because it is contrary to sec. 2, ch. 59, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 55.02], known as the statute on "Frauds and Perjuries." While the lease is in writing, it is signed by "Milton Moses, Agent," and plaintiff insists, is not

signed "by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing signed by such party." It is manifest that the lease is not signed by Dana, or by plaintiff. It is not entirely clear as to whether the Scott estate or Dana was the owner in the spring of 1936. There is no doubt, however, that in April, 1938, plaintiff became the contract purchaser of the premises, that she fully recognized the defendant as her tenant, and that she served notice on the tenant in an attempt to terminate the lease because of alleged breaches therein. At that time she clearly recognized that the defendant was in possession under the lease. At the trial the lease was produced by her. At the time she acquired her interest, on or about April 1, 1938, the lease was delivered to her. At that time the assignment on the reverse side of the lease was executed by Moses. Therefore, at the time the notice of April 11, 1938, was served on defendant, plaintiff was fully acquainted with the provisions of the lease. After the payment to her of $208 on April 14, 1938, plaintiff withdrew the notice to terminate, which had been served on April 11, 1938. Subsequently, she sought to change her position and proceeded on the basis that the lease was not binding on her, and that defendant was in possession under a month to month tenancy. Under sec. 2, ch. 57, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.264], defendant was permitted to establish any defense, legal or equitable, showing that its occupancy was rightful. The purpose of the statute of frauds is to prevent fraud. The application of the statute, under the factual situation shown by the record in the instant case, for the purpose of evicting defendant, would in effect perpetrate a fraud on defendant. There was a full and complete recognition and ratification of the lease by plaintiff. There is abundant evidence to warrant the trial court in finding that defendant

284

was rightfully in possession of the premises. The action of the municipal court of Chicago in finding the issues for defendant and in entering a judgment for costs against plaintiff, was just and right. Therefore, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.