PHILLIP E. FREED, Plaintiff-Appellant, *v.* MAURICE L. YOUNG, Defendant-Appellee.

(No. 58557;

First District (1st Division)—December 28, 1973.

*Revised opinion upon denial of rehearing—July 15, 1974.*

Samuel E. Hirsch, of Chicago, for appellant.

Arvey, Hodes & Mantynband, of Chicago (George L. Siegel and Lawrence C. Rubin, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the revised opinion of the court upon denial of the petition for rehearing:

The plaintiff Freed appeals from an order striking and dismissing with prejudice his fourth amended complaint, leaving a counterclaim against him still pending. Words of finality render the order appealable.

In November of 1969, a written lease, for occupancy when the premises were complete and running until April 30, 1975, for a building loft to be used for the sale of objects of art at a rental of $675 per month, plus certain specified tax increases, was signed by the plaintiff as lessee. It was also signed "Maurice Young, Lessor," at the end but in the introductory heading the lessor is described as "Maurice Young, authorized agent in this behalf." By its terms, it incorporated a three-page typed rider signed by Freed as lessee and by "Maurice Young, Lessor."

Freed moved in after the premises were available in April of 1970, and paid rent under the lease for a little over a year.

On April 6, 1971, he filed a complaint against "Maurice Young, Agent" in which he set up said lease, his occupancy and payment of rent thereunder, alleged that because of inadequate elevator service, heating and air conditioning, he had been constructively evicted, alleged that Maurice Young had no title to the demised premises and no authority "in writing" to lease them for more than 1 year, and sought a declaratory judgment that the lease was not enforceable, plus $10,000 damages and the enforcement of a lien for that sum on the premises. On May 3, 1971, he filed an amended complaint along the same lines.

On June 30, 1971, Freed vacated the premises, returned the keys to Young, paid the rent through that date and has paid nothing since. The premises remained vacant until June 1, 1972, when they were rented to another tenant for $560 per month, $1,000 being allowed for clearing and $1,000 being paid as a commission.

On July 5, 1972, a second amended complaint was filed; and then a third and, on July 19, 1972, a fourth. In Count I of the latter it again alleged the execution of said lease, his occupancy and the payment of rent thereunder, that he was constructively evicted by virtue of the inadequate elevator service and "out of balance" heating and air conditioning which adversely affected his sales and that he finally vacated the

premises on June 30, 1971; that he had had a $1,000 security deposit and had expended large sums in promotion, rental, wages and operating expenses; and prayed judgment for $35,000.

In Count II, it is alleged that Young has never been and is not now the owner of the title to the demised premises "nor the written authorized agent of the title holder"; that the owner was and is the American National Bank & Trust Company, as trustee under a land trust; that the purported lease is not signed on behalf of the party to be charged, as required by the Illinois Statute of Frauds relating to leases for more than 1 year; and that the lease is therefore unenforceable. It prays that a declaratory judgment be entered holding that the plaintiff is not obliged to pay rent after June 30, 1971, when he vacated the premises. He also seeks the return of his $1,000 security deposit.

Count III challenges Young's counterclaim and motion for summary judgment, based on Young's losses arising from the abandonment and reletting of the premises at a loss.

The circuit court on November 16, 1972, entered an order, final in form, striking said fourth amended complaint with prejudice, the cause to continue, as to Young's counterclaim for damages for failure to continue as a paying tenant, etc. The plaintiff's appeal is from this order.

Although the briefs do not clearly define the issues, by distillation they appear to be as follows:

First—Is the lessee here estopped from challenging the lessor's title to the described premises?

Second—Assuming that the lessor himself has no title and that the lessee is no longer estopped from challenging his lessor's title, is the lease here nevertheless enforceable by the lessor against the lessee as a contract to pay rent because it is signed by both parties?

Third—Assuming that the lessor himself has no title, that the lessee is no longer estopped from challenging the lessor's title and that the fact that both parties signed does not *ipso facto* render the lease enforceable by the lessor against the lessee—has the Statute of Frauds here been satisfied by the signature of the lessee Freed as "the party to be charged"?

Fourth—Assuming that the lease is otherwise enforceable, does the fourth amended complaint sufficiently allege facts constituting a constructive eviction?

## I.

■■  Passing now to the first of these issues, it has long been established in Illinois, as elsewhere, that when a lessee goes into possession of the premises described he is thereby estopped to challenge his landlord's title and will not be permitted to prove title in another, or even in him-

self. This applies to actions for the possession of the premises, for past due rent, etc. See 49 Am. Jur. *Landlord and Tenant,* §§ 109, 110, 120, 121, 125, 126; 51C C.J.S. *Landlord and Tenant,* §§ 266, 268, 269, 270; 24 I.L.P. *Landlord and Tenant,* §§ 156, 157.

It is, however, equally well established in Illinois, as elsewhere, that any and all such estoppel vanishes once the tenant goes out of possession, by eviction by the landlord or a paramount title or by surrender of the premises to his landlord, or otherwise. See 49 Am. Jur. 2d *Landlord and Tenant,* §§ 129, 130; 51C C.J.S. *Landlord and Tenant,* §§ 274, 275; 24 I.L.P. *Landlord and Tenant,* § 160, and cases there cited.

The defendant cites *Doty v. Burdick* (1876), 83 Ill. 473, 477; *Pearce v. Pearce* (1899), 83 Ill.App. 77, 81; *Alwood v. Mansfield* (1864), 33 Ill. 452, 458; *People ex rel. Harding v. City of Chicago* (1929), 335 Ill. 450, 454, 167 N.E. 79; *Lake Shore Management Co. v. Blum* (1968), 92 Ill.App.2d 47, 52, 235 N.E.2d 366; and *Rowe v. Kuhn* (1915), 201 Ill.App. 100 (abstract opinion), for the proposition that, by going into possession, Freed, as lessee, is estopped from disputing his lessor's title in an action to enforce the lease. *Doty* was a forcible entry action to evict the tenant. *Pearce* and *Alwood* were suits by the true owner—lessors for past due rent accruing during their lessee's possession. *People ex rel. Harding v. City of Chicago* held only that real estate is not exempt from taxation merely because the City of Chicago is the lessee. *Lake Shore* involved the confession for rent accruing after the defendant had been evicted but neither the Statute of Frauds nor lack of title were pleaded or considered in the trial or appellate court. In *Rowe,* which was a suit by the lessor against the lessee (who had not signed although the lessor had) for rent past due under an oil lease, the court on the third page of its opinion, said:

> "Appellant also contends that there is no evidence that appellees are the owners of the property leased. Appellant having accepted the lease, and paid rent upon it, the suit is on a contract accepted by him. *If appellees were not the owners that was a matter of defense.*" (Emphasis ours.)

None of these cases supports the defendant's contention that the plaintiff lessee, after the surrender of the premises, is estopped with respect to actions for rent thereafter allegedly accruing under the lease, and, as we point out above, the rule is well established that the estoppel as to the lessor's title vanishes once possession ceases; and we so hold.

## II.

This brings us to the second issue—assuming that the lessor himself has no title and that the lessee is no longer estopped from challenging

his lessor's title, is the lease here nevertheless enforceable as a contract to pay rent because it is signed by both parties?

In support of an affirmative answer to this inquiry, the defendant cites *Klein v. Ickovitz* (1970), 121 Ill.App.2d 191, 257 N.E.2d 187; *Coyne v. South Shore DeLuxe Laundry* (1939), 299 Ill.App. 275, 20 N.E.2d 117; and *Lake Shore Management Co. v. Blum* (1968), 92 Ill.App.2d 47, 235 N.E.2d 366.

In *Klein,* the property was held in a land trust which recited that Malvina Klein was the sole beneficiary and "shall in  *  *  *  her  *  *  *  own right have the full management of said real estate and control of the selling, renting and handling thereof  *  *  *." A lease was entered into which was signed by the lessee "For Apex Associates: Malvina Klein." In affirming a judgment for Malvina Klein, d/b/a Apex Associates, the court, after holding that the above language gave her power to sign, "as she did," went on, at page 195, to say:

> "Finally, defendant challenges plaintiff's authority to bring this action, arguing that the holder of the title is the proper plaintiff. This court, however, has upheld the right of a land trust beneficiary-lessor to maintain an action for rent. Bellows v. Ziv, 38 IllApp2d 342, 187 NE2d 265. See also Jakovljevich v. Alvarez, 113 IllApp2d 302, 252 NE2d 60. We see no reason why this principle should not be applicable to rent accruing subsequent to eviction, since the lease agreement expressly states that the lessee's duty to pay rent survives a forcible detainer proceeding, and the validity of such a provision is well established. See Grommes v. St. Paul Trust Co., 147 Ill 634, 35 NE 820; Vintaloro v. Pappas, 310 Ill 115, 141 NE 377; Klein v. Ickovitz, 72 IllApp2d 59, 219 NE2d 73. The obligation to pay rent is not dependent upon title in the lessor, but is governed by the lease agreement."

It should be noted that in *Klein,* the court expressly held that the plaintiff Malvina Klein, *did have the authority in writing to bind the title,* thus rendering its last comment pure dicta.

In *Coyne,* the lease for 5 years was signed "Milton Moses, Agent." The owner at that time was a Mr. H. C. Dana, who later sold the property on contract to the plaintiff M. V. Coyne and Moses assigned the lease to him.

Plaintiff thereafter notified the defendant that he was terminating said lease for certain alleged defaults and, when it failed to vacate, filed a forcible entry and detainer action. In affirming a judgment for the defendant, this court at page 282-284, said:

> "The chief criticism leveled at the judgment is that the lease cannot bind plaintiff because it is contrary to sec. 2, ch. 59, Ill.

Rev. Stat. 1937 [Jones Ill. Stats. Ann. 55.02], known as the statute on 'Frauds and Perjuries.' While the lease is in writing, it is signed by 'Milton Moses, Agent,' and plaintiff insists, it is not signed 'by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing signed by such party.' It is manifest that the lease is not signed by Dana, or by plaintiff. It is not entirely clear as to whether the Scott estate or Dana was the owner in the spring of 1936. *There is no doubt*, however, *that* in April, 1938, *plaintiff* became the contract purchaser of the premises, that she *fully recognized the defendant as her tenant*, and that she served notice on the tenant in an attempt to terminate the lease because of alleged breaches therein. At that time she *clearly recognized that the defendant was in possession under the lease*. At the trial the lease was produced by her. At the time she acquired her interest, on or about April 1, 1938, the lease was delivered to her. At that time the assignment on the reverse side of the lease was executed by Moses. Therefore, at the time the notice of April 11, 1938, was served on defendant, plaintiff was fully acquainted with the provisions of the lease. After the payment to her of $208 on April 14, 1938, plaintiff withdrew the notice to terminate, which had been served on April 11, 1938. Subsequently, she sought to change her position and proceeded on the basis that the lease was not binding on her, and that defendant was in possession under a month to month tenancy. Under sec. 2, ch. 57, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.264], defendant was permitted to establish any defense, legal or equitable, showing that its occupancy was rightful. The purpose of the statute of frauds is to prevent fraud. The application of the statute, under the factual situation shown by the record in the instant case, for the purpose of evicting defendant, would in effect perpetrate a fraud on defendant. *There was a full and complete recognition and ratification of the lease by plaintiff. There is abundant evidence to warrant the trial court in finding that defendant was rightfully in possession of the premises.* The action of the municipal court of Chicago in finding the issues for defendant and in entering a judgment for costs against plaintiff, was just and right. Therefore, the judgment of the municipal court of Chicago is affirmed." (Emphasis ours.)

It should be noted that in *Coyne* the plaintiff was the owner of the title and had recognized the validity of the lease and it is therefore not surprising that his eviction suit failed.

In the third case cited by the defendant, *Lake Shore Management*, the

lease, dated January 1, 1965, was signed by the Blums as lessees and by the "Lake Shore Management Co., as Agents" without anywhere indicating who were the owners. On December 23, 1965, the plaintiff confessed judgment against the defendants on said lease for rental due thereunder for the months of February to November, 1965. After an answer and a trial, the judgment was confirmed and defendants appealed. In affirming, the court, at pages 51 and 52, said:

> "But defendants argue that plaintiff could not bring suit because his principal was undisclosed and not a party to the lease. When a third party has notice that the agent is acting on behalf of a principal but no notice of the principal's identity, the principal is a partially disclosed principal. The agent of a partially disclosed principal is a party to the agreement and capable of bringing suit in his own right. Restatement of Agency 2nd, §§ 4 and 331. See also Hewitt v. Torson, 124 Ill.App. 375. Lake Shore Management Co. purported at all times to act on behalf of another party, never identified. It is therefore the agent of a partially disclosed principal and capable of bringing suit on its own right.
>
>        \*     \*     \*
>
> Furthermore, having taken possession and paid rents, the lessees cannot question the validity of the execution of the lease. See McCormick v. Loomis, 165 Ill App 214."

It should be noted that the months for which judgment for rent was confessed were less than 1 year after the date of the lease and that neither the Statute of Frauds nor lack of mutuality in the enforceability of the lease was pleaded in the trial court or raised or considered in the Appellate Court.

■■ We therefore conclude that the mere fact that both a lessor and a lessee have signed a lease does not *ipso facto* render it enforceable where the lessor has no title or authority to act for the title holder and the lessee is not estopped to challenge this deficiency.

## III.

This brings us to the third issue—assuming that the lessor himself has no title, that the lessee is no longer estopped from challenging the lessor's title and that the fact that both parties signed does not *ipso facto* render the lease enforceable by the lessor against the lessee—has the Statute of Frauds here been satisfied by the signature of the lessee Freed as "the party to be charged"?

Defendant contends that the answer to this inquiry is yes, and cites *Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482; *Hallberg v. Brosseau* (1896), 64 Ill.App. 520; *McCormick v. Loomis* (1911), 165 Ill.App.

214; *Evans v. Schwartz* (1918), 211 Ill.App. 573; and *Wessel v. Eilenberger* (1954), 2 Ill.2d 522, 119 N.E.2d 207.

The precise wording of our statute (Ill. Rev. Stat. 1971, ch. 59, § 2) is pertinent and, in pertinent part, is as follows:

> "2. *Land—Writing—How Signed.* § 2. No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interests in or concerning them, for a longer term than one year, unless such contract some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party.
> * * *"

It is our considered conclusion that the Statute of Frauds (like "the flowers that bloom in the spring, tra, la" in Gilbert and Sullivan's *Mikado*) has "nothing to do with the case" because the lessor, who himself had absolutely no title, signed only for himself and did not even purport to act as agent for a named lessor who, in turn, did have title. The only lessor is Maurice Young, the defendant.

We shall, however, discuss the cases cited by the defendant.

■■ *Ullsperger* did not even involve a lease but a sale by the owner. He signed and gave to the purchaser a document reciting "Received of Anton Ullsperger $100 on said purchase of the property No. 1031 Milwaukee Avenue, at the price of $14,000." The purchaser did not sign but a few days later tendered the $13,900 balance, which was refused. In reversing the dismissal of his bill in equity for specific performance, the court quoting from the American and English Encyclopedia of Law, volume 29, page 858, said, at page 269:

> "* * * 'The weight of authority is, that the statute is satisfied if the memorandum be signed by the parties sought to be charged, alone,—or, in other words, by the party defendant in an action brought to enforce the contract, whether he be vendor or vendee. In the case of a contract for the sale of lands the vendor is usually the person to be charged, and a memorandum signed by him alone is valid. The party not signing the memorandum is not bound unless, as held by some authorities, he has accepted the same as a valid, subsisting contract. *Want of mutuality arising from the failure of both parties to sign cannot be successfully pleaded as a defense by the party who did sign, as the act of filing a bill for specific performance binds the plaintiff and renders the contract mutual.'*" (Emphasis ours.)

■■ The *Hallberg* case is peculiar in that not the lessee (who had not signed although the landlord had) but his guarantor was the defendant

and the court's conclusion was that the Statute of Frauds was not available to him because it was a purely personal privilege, citing *Chicago Dock Co. v. Kinzie* (1868), 49 Ill. 289, where the court had said, at page 293:

> "Again, this statutory defense is personal, and can not be interposed by strangers to the agreement. Like usury, infancy, and a variety of other defences, it can only be relied upon by parties or privies. Mere strangers have no right to plead or insist upon it for the benefit of others. It in nowise concerns them, and hence it must be left to the parties making it, or those holding in privity with him, to make it or not, as they may choose. It then follows, in this case, that appellee can not be heard to insist that the contract between Ogden and Higgins was not binding."

In *McCormick*, the 2-year lease was signed by the lessee and "Nettie F. McCormick, by John A. Chapman, her agent" for the lessor. The lessee defendant, after being in possession for over a year, moved out and paid his rent to that date but not for the last 10 months left on the term. The agent had no written authority to sign the lease. It should be noted that the true owner was the named lessor and that the suit was brought by Nettie McCormick, the true owner. No such situation exists in the case at bar where the owner is nowhere named or even hinted at in the lease and is not a party to this action.

*Evans* is another case holding that where a tenant moves in and pays rent, he is estopped to challenge his lessor's title or authority. But we hold that such estoppel vanishes when possession ceases.

The fifth and last case cited, *Wessel*, did not involve either a lease or a sale and was a bill specifically to enforce an oral agreement by an elderly man to devise and bequeath his farm to a single lady upon his death in consideration of her leaving her own home, moving in with him and nursing him until his death. And the court held that her performance took the contract out of the Statute of Frauds.

It should be noted that the reason why our courts have on occasion upheld actions where only one of the parties signed is that mutuality is established when the non-signing owner of the real estate is either the plaintiff or has otherwise irrevocably recognized the validity of the contract to sell or lease. Such is not the case here because the true owner has seen fit not to become or join as plaintiff or to file an affidavit showing that Young was its authorized agent. Here the true owner wants the best of two possible worlds—to be able to maintain an action against the tenant and yet to have a perfect defense at the same time.

After digesting the many citations and involved arguments here presented, one is somehow inclined to recall the small child, in Hans

Christian Andersen's story—*The Emperor's New Clothes*—who, after the Emperor appeared in the procession naked, blurted out the obvious fact that "but he has nothing on." The most obvious fact in the case at bar is that the lessor had and has absolutely no title to the premises described in the lease and that the lessee, having surrendered his possession and paid rent up to that point, is no longer estopped from saying so.

We therefore conclude that Count II of the fourth amended complaint alleges facts which, if conceded or proved, would entitle Freed to the relief he seeks. The defendant should therefore be required to respond to it.

### IV.

So much of the fourth amended complaint as seeks to establish a constructive eviction as a defense is without merit and so much (Count III) as seeks damages allegedly flowing therefrom is not only inconsistent but premature until the validity of the lease has been determined.

We therefore affirm so much of the judgment order as struck and dismissed Counts I and III of the fourth amended complaint, reverse so much of said order as struck and dismissed Count II and remand the case for further proceedings not inconsistent with the views above expressed.

Judgment order affirmed in part, reversed in part and remanded with directions.

EGAN, P. J., and BURKE, J., concur.