**In re GROCERLAND COOPERATIVE, INC., an Illinois Corporation, Bankrupt.**

**Bankruptcy No. 78 B 2644.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 2, 1983.

Paul Fox, Holleb & Coff, Ltd., Chicago, Ill., for petitioner.

Mark Fine, Baum, Glick & Wertheimer, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action involves the validity of a claim filed against Grocerland Coopera-

tive, Inc. (hereinafter referred to as debtor). The debtor was a purchasing cooperative incorporated under the laws of Illinois. Its members consisted of retail grocery stores not affiliated with a national supermarket chain.

The corporate purpose of the debtor was to purchase grocery goods in bulk amounts. The discounts obtained from the bulk purchases were to be passed along to the member grocery stores in the form of lower prices for grocery goods. Consequently, it was hoped that this arrangement would enable the smaller grocery stores to compete more effectively with the larger supermarket chains.

The debtor's operations were primarily based from a warehouse located at 3636 West 51st Street, Chicago, Illinois. The warehouse formed the corpus of a land trust (No. 17576) held by LaSalle National Bank and Trust Company (hereinafter referred to as "LNB"). The debtor signed a 30 year lease with LNB, as trustee, to use the warehouse for the sale and distribution of grocery goods. The lease commenced on December 1, 1959.

LNB's authority to act as lessor was conferred under the terms of the land trust. The land trust agreement specifically designated LNB as both the legal and equitable title holder of the warehouse. The land trust agreement contained the customary Illinois land trust provisions concerning the respective rights and duties of the trustee and beneficiaries.[1] Eighty-four different entities and participants were beneficiaries of land trust No. 17576. The largest interest in the trust was held by the debtor. The debtor held approximately a 14% beneficial interest in the land trust.

The lease agreement was honored without major difficulties until some time in 1977. At that point, the debtor began to encounter financial difficulties. On April 6, 1978, an involuntary petition in bankruptcy was filed against the debtor by three petitioning creditors. On May 15, 1978, the debtor was adjudicated a bankrupt.

The first meeting of creditors was held on June 6, 1978. Unsecured claims involving over 500 creditors were scheduled by the debtor. The scheduled unsecured claims alone represented liabilities in excess of $2,000,000.00. Frank Del Medico (hereinafter referred to as trustee) was elected as trustee on November 19, 1980.

Zack Ritsos (hereinafter referred to as Ritsos), a beneficial holder of a 6.87% interest in the land trust, filed a timely proof of claim against the debtor for $653,986.88.[2]

---

1. The relevant provisions of the land trust agreement are as follows:

> IT IS UNDERSTOOD AND AGREED between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate, and that such right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid. . . .

. . . . .

> The beneficiary or beneficiaries hereunder shall in his, her or their own right have the full management of said property and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall collect and handle the rents, earnings, avails and proceeds thereof, and said Trustee shall have no duty in respect to the management or control of said property or in respect to the payment of taxes or assessments, or in respect to insurance, litigation or otherwise, except on written direction as hereinabove provided, and after the payment to it all moneys necessary to carry out said instructions. No beneficiary hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally.

. . . . .

2. Under Bankruptcy Rule 302(e) a claim must be filed within six months after the first date set for the first meeting of creditors in order to

Ritsos' interest in the land trust was held in joint tenancy with his wife. The amount claimed purportedly represented unpaid present and future obligations of the debtor due under terms of the lease. Of that amount, $300,000.00 was listed as damages suffered by the trust for failure of the debtor to maintain the warehouse premises. No further specification was provided in the proof of claim as to how the $300,000.00 figure was arrived at.

The balance of the claim is based upon alleged unpaid rent and real estate taxes. This court notes that the warehouse was sold in the early part of 1979. The beneficiaries of the land trust have already received a cash distribution from the proceeds of the sale of the warehouse. The sale price of the warehouse was $732,550.00, only $80,000.00 more than the total amount sought in the claim filed by Ritsos.

In his proof of claim, Ritsos listed himself as beneficial owner of land trust No. 17576. He further represented that he was filing the claim on behalf of all the beneficiaries of the land trust. The portion of the proof of claim form which inquires whether an individual is acting as agent in filing the claim was carefully scratched out. There is no other evidence, other than Ritsos' own representation, that he was acting as the duly authorized agent of the beneficiaries of land trust No. 17576. It might also be noted that Ritsos was an officer and director of the debtor. It is further noted that Ritsos was an attorney and thus should have had knowledge of the requisite requirements for filing a claim as the representative of a class.

Subsequent to the filing of the proof of claim, Ritsos died. His brother, Peter Ritsos, also an attorney, has attempted to substitute himself as the purported class representative of the beneficiaries. The trustee has objected to the proof of claim, contesting the standing of either Zack or Peter Ritsos to act as a class representative absent proof of authority. Furthermore, the trustee contends that the purported claim is illusory and should accordingly be denied.

share in the proceeds of any distribution that

Consequently, this court must determine to what extent, if at all, the individual claim of Zack Ritsos should be allowed.

I.

## THE INDIVIDUAL CLAIM OF ZACK RITSOS

In that numerous questions of law and fact have been raised by the parties, this court will first address the issue of whether the beneficial owner of a land trust can bring a claim for damages suffered by the trust. If this answer turns out to be negative, the issue of class representation will be mooted.

The pre-Code Act is applicable to this proceeding by virtue of the filing date of the involuntary petition, which occurred while the Act was still in force. Bankruptcy Rule 302 provides that "... a claim must be filed within six months after the first meeting of creditors ..." in order for a creditor to share in the distribution of any proceeds from a bankrupt's estate. *See In re Ebeling,* 123 F.2d 520, 521 (7th Cir., 1941) (a claim shall not be proved against a bankrupt estate subsequent to the six month bar date of Section 57(N)); *See also Matter of Evanston Motor, Inc.,* 26 B.R. 998, 1003 (D.C.N.D.Ill., 1983). (The District Court cited *Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433, 437–39 (2d Cir., 1978) for the proposition that a bankruptcy court should not use its equitable powers to extend the six month filing date).

In the case at bar, a proof of claim was filed within the requisite time period. However, the trustee alleges that Ritsos was not authorized to file the claim. Consequently the trustee contends that absent proof of authority to act as a class representative, Ritsos' claim should be denied.

Bankruptcy Rule 301(a) provides in relevant part that "... a proof of claim shall consist of a statement in writing setting forth a creditor's claim and ... [with certain exceptions not applicable to this proceeding] ... shall be executed by the

may be made from an estate.

creditor or by his authorized agent ..." The Act defined creditor to include "anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." 11 U.S.C. § 1(11) (1976), *repealed by* Bankruptcy Reform Act (November 6, 1978). *See generally* 1 *Collier on Bankruptcy,* ¶ 1.12, at 76–84.1 (14th Ed. 1981). Prior to determining whether Ritsos was a creditor within the meaning of Section 1(11), this court must first determine whether federal or state law should be applied.

The Supreme Court in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) held that: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." The bankruptcy courts fall squarely within the above exception to the general rule that state law applies. Their jurisdiction is granted by an Act of Congress. Section 2(2) of the Act provided that the bankruptcy court was invested with such jurisdiction as to enable them to exercise original jurisdiction to allow or disallow claims against the estate. 11 U.S.C. § 11(2) 1976), *repealed by* Bankruptcy Reform Act (November 6, 1978).

However, cognizant of the above principles, this court notes the importance of state law in determining the origin and existence of claims against a bankrupt's estate. *See In re Spanish Trails Lanes, Inc.,* 16 B.R. 304, 306 (Bkrtcy.D.Ariz.1981) (bankruptcy courts in determining which claims are allowable should look to state law in determining origin and existence of claim; however after this initial determination is made, state law is no longer controlling and the court is free to use its equitable powers in allowing or disallowing a claim); *See also Matter of Zienel Furniture, Inc.,* 13 B.R. 264, 265 (Bkrtcy.E.D.Wis., 1981) (rights of parties to real estate are governed by state law unless there are contrary provisions in the Bankruptcy Code).

Thus, this court will apply a two-pronged analysis to resolve the issue before the court. First, the court must analyze Illinois law to determine the nature of the ownership interest one has as a beneficiary of an Illinois land trust. Second, the purpose and language of Bankruptcy Rules 301 and 302 must be analyzed to determine whether the beneficiary of a land trust is to be considered a proper claimant. *See In re Romano,* 426 F.Supp. 1123, 1127 (N.D.Ill., 1977), *appeal disposed of as moot,* 618 F.2d 109 (7th Cir., 1980) (district court employed two prong analysis in determining whether the beneficiary of a land trust could qualify as a debtor under Chapter XII).

In order to determine what the rights and interests of a beneficiary to a land trust are, it is a prerequisite to understand what a land trust is. A land trust is typically:

> created by execution of a deed in trust transferring all legal and equitable title to a trustee. The deed specifically provides that one dealing with the trustee need not inquire about the trust agreement and stipulates that the interest of the beneficiary is personal property. The deed [is] recorded. A second document, the trust agreement, [is] simultaneously executed, though not recorded. That agreement recites that all legal and equitable title remains with the trustee with an assignable personal property interest in the beneficiary. The beneficiary retains absolute control of the management and receives all the proceeds of the property. Under the agreement, all money advanced by the trustee must be paid by the beneficiary, and the trustee is not required to pay any taxes or assessments. The beneficiary may order the land sold at any time, and the trustee may not act except on written authorization of the beneficiary.

*People v. Chicago Title & Trust, Co.,* 75 Ill.2d 479, 485–86, 27 Ill.Dec. 476, 482–83, 389 N.E.2d 540, 542 (1979); *See also Chicago Federal Savings & Loan Association v. Cacciatore,* 25 Ill.2d 535, 543, 185 N.E.2d 670, 674 (1962).

In *Jakovljevich v. Alvarez,* 113 Ill.App.2d 302, 252 N.E.2d 60 (1st Dist.1969), the court dealt with the issue of whether the benefi-

ciary of a land trust could sue a lessee for back rent. In *Alvarez,* the plaintiff was the sole beneficiary of a land trust. The relevant trust provisions concerning the rights and duties of the trustee were identical to the provisions of the trust agreement before this court. Similarly, the trustee in *Alvarez* signed the lease as lessor. The *Alvarez* court held that since the plaintiff was not a party to the lease and held only a beneficial interest in the land trust, he was not the proper party to bring the suit for unpaid rent. Rather, the trustee bank was the only proper party entitled to bring the action, *Id.* at 308, 252 N.E.2d at 63. *See generally,* H. Kenoe, *Kenoe on Land Trusts,* ¶ 620–625 (1978).

■ Generally, the interest of a beneficiary in a land trust is controlled by personal property rules. *See Conley v. Petersen,* 25 Ill.2d 271, 184 N.E.2d 888 (1962) (upon death of beneficiary his interest passes under the personal property laws of Illinois, and not like heirs at law like all real property); *Freed v. Young,* 21 Ill.App.3d 64, 315 N.E.2d 72 (1st Dist.1974) (lease entered into by a land trust beneficiary signed as "authorized agent" of land trustee to be unenforcible by the beneficiary); *Sterling Savings & Loan Association v. Schultz,* 71 Ill. App.2d 94, 218 N.E.2d 53 (1st Dist.1966) (unlike real property, a beneficial interest is not encumbered by homestead or dower rights). The claimants, however, cite *Klein v. Ickovitz,* 121 Ill.App.2d 191, 257 N.E.2d 187 (1st Dist.1970) and *Bellows v. Ziv,* 38 Ill.App.2d 342, 187 N.E.2d 265 (1st Dist. 1962) for the proposition that the beneficiary of a land trust can properly bring a claim for possession and unpaid rents. Both *Bellows* and *Klein* are factually distin-

guishable from the case at bar. Both cases involved land trust situations where the plaintiff was both the sole beneficiary of a land trust and the executor (lessor) of the lease.

■ In the case at bar, there are numerous beneficiaries of the land trust. In addition, the trustee was the lessor of record. Furthermore, the composition of the list of beneficiaries includes parties with definite adverse interests (the debtor is the largest beneficiary). Consequently, based on the factual distinctions present, this court holds that *Bellows* and *Klein* are not controlling.

It is this court's opinion that the beneficial interest held by Ritsos was of a personal nature. *See In re Romano,* 426 F.Supp. 1123, 1128 (N.D.Ill.1977), *appeal disposed of as moot,* 618 F.2d 109 (7th Cir.1980) (Illinois has not merely placed a label on the interests held by the beneficiaries of a land trust, but has changed in a fundamental way the very nature of the interests themselves. Consequently, personal property law and traditions apply to the beneficial interests). Inherent in this conclusion is the further proposition that Ritsos, under Illinois law does not have the necessary legal or equitable interest required to be a claimholder under Bankruptcy Rule 301.[3] *See In re Howell-Kessler Co.,* 447 F.Supp. 976, 977 (S.D.N.Y.1978) (a beneficiary of a land trust has equitable ownership only upon condition that he is barred as a matter of state law from holding legal title).

A conclusion that Ritsos is precluded from recovering under Illinois law, does not mean that Ritsos is prevented from recover-

---

**3.** The claimant cites several Illinois cases which hold that a beneficiary has more than just personal rights under a land trust. See *Dunlop v. McAtee,* 31 Ill.App.3d 56, 333 N.E.2d 76 (2nd Dist.1975) (court allowed contractor to impress mechanics lien against real estate held in land trust, as contractor had dealt directly with beneficiary. Court held owner of a beneficial interest in a land trust is an owner within the meaning of the Illinois Mechanics Lien Act); *See also Robinson v. Walker,* 63 Ill. App.2d 204, 211 N.E.2d 488 (1st Dist.1965) (the beneficiaries of a land trust were held to be

proper parties in an action brought under the Illinois Dram Shop Act. The beneficiaries were the owners and operators of the specific establishment in question). This court finds both *Dunlop* and *Robinson* inapplicable to the case at bar. Both cases involved statutes that were enacted to solve specific problems. Consequently, the broad construction given to the interests of a land trust beneficiary by the *Dunlop* and *Robinson* courts were necessary to achieve a specific remedial purpose not present in this proceeding.

ing under federal law. Provisions for the qualifications of those filing claims in the Bankruptcy Court are governed by federal legislation. *Matter of Bowers,* 16 B.R. 298, 302 (Bkrtcy.D.Conn.1981). Illinois law supplies the factual matter concerning the nature of a beneficiary's interest in land trust. It is upon these facts, as defined by Illinois law, that the federal standard is applied.

As a court of equity, this court has the power and the duty to interpret the goals sought to be achieved by the drafters of the Bankruptcy Act. *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). This court notes many instances where state law principles were supplanted by their federal counterparts in the bankruptcy area. *See Board of Trade of City of Chicago v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) (seat on the Chicago Board of Trade was property of the bankrupt's estate even though state law did not recognize the holder of the seat as having a property interest); *Matter of Gladstone Glen,* 628 F.2d 1015, 1019 (7th Cir.1980) (the characterization of a beneficiary's interest in a land trust as personal property was not controlling for federal law purposes); *In re Diversified Development Corp.,* 341 F.2d 58, 59 (7th Cir.1965) (although claim in state court is unenforceable, such claims are not void in a bankruptcy proceeding).

Consequently, this court must determine from the history of Bankruptcy Rule 301 whether Ritsos should be precluded from recovering under federal law. The drafters of the Bankruptcy Act were concerned with creating an orderly system whereby the debtor's assets were to be truly and equitably distributed amongst its creditors. In order to achieve this result, it was felt that a person's qualifications as a creditor entitled to a distributive share needed to be carefully scrutinized. *See* 3 *Collier on Bankruptcy,* ¶ 57.01, at 109 (14th edition 1981). This intent was reflected in the language of former Section 57 of the Bankruptcy Act. 11 U.S.C. § 93(a) (1976), *repealed by* Bankruptcy Reform Act (November 6, 1978). Rule 301 contains substantial-

ly the same language as former Section 57(a).

In the case at bar, both parties agree that Ritsos filed a timely proof of claim. The only issue is whether his status as a land trust beneficiary precludes his recovery. *See In re State Thread Co.,* 126 F.2d 296, 300 (6th Cir.1942) (substantial compliance with forms and orders of Bankruptcy Act are sufficient enough); *In re Ebeling,* 123 F.2d 520, 521–22 (7th Cir.1941) (where proofs of claims were timely filed by bondholders, claims were allowed even though trustee held legal title).

In construing the rights and interests of a land trust beneficiary, the courts have looked at the various incidents of ownership held by a beneficiary. Thus, in *People v. Chicago Title & Trust Co.,* 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979), the Illinois Supreme Court held that the beneficiary of a land trust could be held liable for unpaid real estate taxes. This opinion is consistent with several later decisions which looked through the formalities of title held by a land trust beneficiary. *See Matter of Gladstone Glen,* 628 F.2d 1015, 1019 (7th Cir.1980). (beneficiary was "equitable owner" of "real property" and thus "debtor" entitled to petition for relief under former Chapter XII of Bankruptcy Act); *Difoggio v. United States,* 484 F.Supp. 233 (N.D.Ill. 1979) (beneficiary of an Illinois land trust is entitled to redeem realty sold to satisfy federal tax liabilities).

Concluding, this court is of the opinion that the claim filed by Ritsos does not create a situation where the orderly distribution of this estate would be delayed or destroyed. In that the land trustee failed to file a formal proof of claim for damages against the estate, Ritsos' only recourse was to file an individual proof of claim. Consequently, this court holds that Ritsos was a creditor within the meaning of 11 U.S.C. 1(11) (1976) *repealed by Bankruptcy Reform Act* (November 6, 1978) and is entitled to receive a percentage distribution from the proceeds of the estate.[4]

4. Since the beneficial interest of Ritsos was  held in joint tenancy with his wife, upon his

## II.

### THE CLAIM OF ZACK RITSOS AS A CLASS REPRESENTATIVE

The next issue that this court must determine is whether Ritsos satisfied the necessary requirements to maintain either a class action or a class claim. If the answer is affirmative, then this court must determine whether Peter Ritsos can be properly substituted as a class representative. Bankruptcy Rule 302, (as amended) provides in relevant part that:

a) *Manner of Filing.* In order for his claim to be allowed, every creditor, including the United States, any state, or any subdivision thereof, must file a proof of claim in accordance with this rule . . . .

e) *Time for Filing.* A claim must be filed within six months after the first date set for the first meeting of creditors . . . . .

The six month rule has been strictly construed by the courts in this district. *See In re Ebeling,* 123 F.2d 520 (7th Cir.1941); *Matter of Evanston Motor, Inc.,* 26 B.R. 998 (D.C.N.D.Ill.1983); *Matter of Grocerland Cooperative, Inc.,* 32 B.R. 425 (Bkrtcy.N.D. Ill. 1983).

Ritsos filed his claim attempting to act as the representative of all other beneficiaries of land trust 17576. As such, for purposes of this opinion, his claim will be treated as analogous to that of a class action.[5] The controlling provision for class actions is Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides in relevant part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the

---

death his interest passes to her. *See Estate of Elliott,* 33 Ill.App.3d 1046, 339 N.E.2d 378, 379–80 (1st Dist.1975).

**5.** This court, of course, recognizes the distinction between a class claim and a class action. However, many of the requirements for each are similar and for purposes of this opinion can be disposed of concurrently. The proof of claim listed Zack Ritsos as filing "on behalf of the owners" . . . typical class action terminology.

difficulties likely to be encountered in the management of a class action . . . . .

■ It is clear that the burden is on the movant to establish that his action satisfies each requirement of Rule 23. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The court has discretionary power, based on the particular facts of a case, to decide whether a class satisfies the prerequisites of Rule 23. *Matter of Shulman Transport Enterprises, Inc.,* 21 B.R. 548, 551 (Bkrtcy.S.D.N.Y.1982).

In most instances, class action principles are antithetical to those of bankruptcy. *See* 3B *Moore's Federal Practice,* ¶ 23.02 at 2–5 (2nd Edition 1983). In *In re Society of the Divine Savior,* 15 Fed.R.Serv.2d 294 (E.D.Wis.1971), a petitioner brought suit against the debtor for the breach of an annuity contract. The petitioner sought court approval to maintain her suit as a class action on behalf of similarly situated creditors (there were 1,100 other annuitants). The court denied the petitioner's motion citing the direct conflict with the Bankruptcy Act which would result if the class action was granted. Specifically, the court held that Section 57 of the Bankruptcy Act (the predecessor of Rule 302) required that each and every creditor had to file a claim in order to participate in the proceeds. Otherwise, to allow the petitioner to maintain a class action would allow all the class members to share in any distribution without fulfilling the statutory requirements of the Bankruptcy Act. *Id.* at 298.

The holding in *Divine* has been followed in several recent decisions. *See Matter of Shulman Transport Enterprises, Inc.* 21 B.R. at 551 (certification would circumvent the stringent requirement that every creditor file his proof of claim); *In re Woodmoor Corp.,* 4 B.R. 186, 192 (Bkrtcy.D.Colo.1980) (class could consist only of persons who had filed separate and timely proofs of claims); *See also Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584 (9th Cir.1963) (attempted class filing denied because of failure of creditors to file individual proofs

of claims). Courts that have stated a class action could be appropriate in bankruptcy proceedings have imposed numerosity requirements over and above that present in this case. *See In re Woodmoor Corp.,* 4 B.R. at 189 (the fact that there were 900 claimants did not demonstrate that class action would be appropriate); *S.E.C. v. Aberdeen Securities Co.,* 480 F.2d 1121 (3rd Cir.1973), *cert. den.* 414 U.S. 1111, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973) and *In re Penn Central Transportation Co.,* 328 F.Supp. 1273 (E.D.Pa.1971), *aff'd* 455 F.2d 976 (3rd Cir.1972) (class action suits were found to be inappropriate in railroad reorganization proceedings); *In re W.T. Grant,* 24 B.R. 421 (Bkrtcy.S.D.N.Y.1982) (33 claimants did not satisfy the requisite numerosity rule for a class action suit); *cf. In re REA Express, Inc.,* 10 B.R. 812 (Bkrtcy.S.D.N.Y.1981) (court granted certification of a representative of approximately 1,000 similarly situated claimants).

■ In the case at hand, the question of numerosity does not even need to be reached. This court finds the opinion of the 11th Circuit in *Matter of GAC Corp.,* 681 F.2d 1295 (11th Cir.1982) to be controlling. The *GAC* court dealt with an issue similar to the situation in this case. In *GAC* a creditor was the holder of a debt security of the bankrupt corporation. The creditor attempted to file a claim on behalf of all holders of the bankrupt's debt securities. The class could have potentially consisted of 280,000 claimants. Nonetheless, the *GAC* court denied the petitioner's motion for class certification. The holding was based upon the failure of several procedural requirements necessary for the maintenance of a class action.

Several of the procedural violations are similarly present in this case. First, here, as in *GAC,* the class claimant failed to notify his fellow claimants of the attempt to file a class claim. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176–79, 94 S.Ct. 2140, 2151–53, 40 L.Ed.2d 732 (1974) (the Supreme Court stated the importance of notice to class members in a class action proceeding). Second, here, as in *GAC,* the

class claimant failed to seek certification from the court in a timely fashion. This is a necessary requirement under Rule 23(c)(1). Third, Ritsos was the only beneficiary who filed a timely proof of claim. As the *GAC* court recognized, it is within the bankruptcy court's discretion to allow only those claimants who filed a timely proof of claim to participate in a class action. This court is of the similar opinion that only those claimants who file timely proofs of claims should be allowed to participate in any class action. In this case, Ritsos was the only person to satisfy that standard.

Consequently, in light of all the above factors, this court holds that Zack Ritsos failed to meet the burden of proving he was a proper class representative. Ritsos was a lawyer and should have been aware of the necessary procedures required for the maintenance of a class action. Of special note is the great care taken by Ritsos in lining out all references to any agency authority he may have possessed in the proof of claim form. Furthermore, in view of the adverse interests held by different members of the land trust, Ritsos failed to prove that he was an adequate representative.

The decision by this court not to allow other beneficiaries to file retroactive proofs of claim may seem like a harsh result. However, this decision is consistent with the principles espoused by the *GAC* court. *See also Hoos & Co. v. Dynamics Corp.,* 570 F.2d 433, 437–39 (2d Cir.1978) (it would be inequitable to the old creditors, debtor and new creditors not to have a cut-off day beyond which even claims on a scheduled indebtedness may not be filed); *Matter of Evanston Motor Co., Inc.,* 26 B.R. 998, 1005 (N.D.Ill.1983) (Trustees, creditors, debtors and even Bankruptcy Judges are entitled to some measure of finality in a bankruptcy proceeding. If a proper "claim" is not timely "filed" by a creditor, that claim should not be allowed). Finally, this court's decision necessarily renders moot the claim of Peter Ritsos to act as a substitute class representative.

## III.

### DAMAGES

The last matter to be disposed of is the question of damages. The trustee alleges that the amount claimed by Ritsos, $653,-986.88 is "indefinite, illusory and otherwise improper." Consequently, the trustee urges that this court strike his claim as a matter of law.

Bankruptcy Rule 301 requires that "... A proof of claim shall consist of a statement in writing setting forth a creditor's claim ...". Generally, contingent and unliquidated claims are permitted. *See generally 3 Collier on Bankruptcy,* ¶ 57.03 at 127 (14th edition 1981). However, the courts have held that all vital facts giving rise to the claim should be set forth with particularity. *See Matter of International Match Corp.,* 69 F.2d 73, 76 (2d Cir.1934) (while it is true that claimants are not held to the niceties of formal pleading, their proofs of claim should at least allege facts from which liability on the part of the bankrupt can be seen to exist); *Orr v. Park,* 183 F. 683 (5th Cir.1910) (unless proof is set forth with sufficient validity, referee can deny it).

Ritsos' claim, for purposes of this opinion, will be divided into two components. First, Ritsos alleges that the land trust suffered $300,000.00 in damages as a result of the debtor's failure to maintain the warehouse premises. There is no supporting documentation to support this claim. This court notes that as an officer and director of the debtor, Ritsos was in a position to obtain the relevant information to support his claim for damages. In the absence of such information, this portion of Ritsos' claim does not contain the particularities necessary to aid the trustee in the administration of this estate. Consequently, this court strikes the $300,000.00 claim for damages. *See In re G.E.C. Securities, Inc.,* 223 F.Supp. 861, 864 (S.D.N.Y.1963), *aff'd* 331 F.2d 655 (2d Cir.1964) (reasonable grounds for allowance of claim against bankrupt must be shown).

Second, Ritsos alleges the balance of the amount claimed ($353,986.88), represents unpaid rent, real estate taxes and insurance costs. However, although the information supplied is somewhat more concrete then that supplied for damages, it is still not enough.[6] This court is of the opinion that the information supplied is sufficient only to withstand a motion for dismissal. It must be reiterated that in order for this court to approve a proof of claim, facts of sufficient particularity must be supplied to put the trustee on notice.

Consequently, a further evidentiary hearing must be set to prove up the balance of the alleged claim. Absent such a specification of damages, this court will have no recourse but to strike the entire claim.

## IV.

### CONCLUSION

After reviewing the issues and arguments raised by the respective parties to this proceeding, this court holds that only the individual claim of Zack Ritsos is valid. However, in order to recover any proceeds from the distribution of this estate, a representative of Ritsos' will have to come in and prove up the damages suffered by the land trust at a future hearing.

**6.** The only information that Ritsos supplied concerning the alleged damages suffered by the trust is as follows:

The trustee is to furnish a draft order in accordance with this opinion within five days.

Statement of Amount Claimed and Due from Debtor:

1. Unpaid rent due prior to 12/1/77 as per Lease ----------------------- $ 66,513.97
2. Unpaid rent due from 12/1/77 to 4/6/78 at $7,125.00 per month as per lease attached -------------------------------------------------- 29,925.00
3. Unpaid 1977 Real Estate Taxes ----------------------------------- 69,854.69
4. Plus one year damages pursuant to The Bankruptcy Act for:
   Rent from 4/6/78 to 4/5/79 at $7,125.00 per month -------------------- 85,500.00
   Real Estate Taxes for 1978 as per lease attached and bases on 1977 Real Estate Taxes ------------------------------------------------------- 69,854.69
   Approximate cost of insurance coverage as per terms of lease attached 20,000.00
5. Failure to maintain premises as per lease attached. Estimated cost of repairs for deferred maintenance ----------------------------------- 300,000.00
6. Expenses of Debtor paid by claimant to protect the leased premises ------ 12,338.53

TOTAL -------------------- 653,986.88